# CHANDLER *v.* ROUDEBUSH, ADMINISTRATOR OF VETERANS' AFFAIRS, ET AL.

No. 74–1599.   Argued March 2, 1976—Decided June 1, 1976

STEWART, J., delivered the opinion for a unanimous Court.

*Joel L. Selig* argued the cause for petitioner. With him on the briefs were *Paul R. Dimond, J. Harold Flannery,* and *Stuart P. Herman.*

*Assistant Attorney General Lee* argued the cause for respondents. With him on the brief were *Solicitor Gen-*

eral Bork, Deputy Solicitor General Wallace, Kenneth S. Geller, and Robert E. Kopp.[*]

MR. JUSTICE STEWART delivered the opinion of the Court.

In 1972 Congress extended the protection of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e et seq. (1970 ed. and Supp. IV), to employees of the Federal Government. A principal goal of the amending legislation, the Equal Employment Opportunity Act of 1972, Pub. L. 92–261, 86 Stat. 103, was to eradicate " 'entrenched discrimination in the Federal service,' " Morton v. Mancari, 417 U. S. 535, 547, by strengthening internal safeguards and by according "[a]ggrieved [federal] employees or applicants . . . the full rights available in the courts as are granted to individuals in the private sector under title VII." [1] The issue presented by this case is whether the 1972 Act gives federal employees the same right to a trial de novo of employment discrimination claims as "private sector" employees enjoy under Title VII.

## I

The petitioner, Mrs. Jewell Chandler, is a Negro. In 1972 she was employed as a claims examiner by the Veterans' Administration. In August of that year she applied for a promotion to the position of supervisory claims examiner. Following a selection procedure she was designated as one of three finalists for the position.

---

[*]Jack Greenberg, James M. Nabrit III, Charles Stephen Ralston, Melvyn Leventhal, and Eric Schnapper filed a brief for the N. A. A. C. P. Legal Defense and Educational Fund, Inc., as amicus curiae urging reversal.

[1] S. Rep. No. 92–415, p. 16 (1971) (hereinafter cited as Senate Report).

The promotion was awarded to a Filipino-American male. The petitioner subsequently filed a complaint with the Veterans' Administration alleging that she had been denied the promotion because of unlawful discrimination on the basis of sex and race. After an administrative hearing on the claim, the presiding complaints examiner submitted proposed findings to the effect that the petitioner had been discriminated against on the basis of sex but not race and recommended that she be given a retroactive promotion to the position for which she had applied. The agency rejected the proposed finding of sex discrimination as not "substantiated by the evidence," and accordingly granted no relief.[2] The petitioner filed a timely appeal to the Civil Service Commission Board of Appeals and Review, which affirmed the agency's decision.

Within 30 days after receiving notice of the Commission's decision, the petitioner brought the present suit in a Federal District Court under § 717 (c) of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972, 86 Stat. 111, 42 U. S. C. §§ 2000e–16 (c) (1970 ed., Supp. IV). After moving unsuccessfully for summary judgment, she initiated discovery proceedings by filing notice of two depositions and a request for the production of documents. The respondents moved for an order prohibiting discovery on the ground that the judicial action authorized by § 717 (c) is limited to a review of the administrative record. The petitioner opposed the motion, asserting that she had a right under § 717 (c) to a plenary judicial trial *de novo*. The District Court adopted the holding of the United States District Court for the District of Columbia in *Hackley* v. *Johnson,* 360 F. Supp. 1247, rev'd

---

[2] The Veterans' Administration accepted the examiner's proposed finding of no race discrimination.

*sub nom. Hackley* v. *Roudebush,* 171 U. S. App. D. C. 376, 520 F. 2d 108, that a "trial *de novo* is not required [under § 717 (c)] in all cases" and that review of the administrative record is sufficient if "an absence of discrimination is affirmatively established by the clear weight of the evidence in the record . . . ." 360 F. Supp., at 1252.[3] Applying this standard of review, the District Court determined that "the absence of discrimination is firmly established by the clear weight of the administrative record" and granted summary judgment in favor of the respondents. The Court of Appeals affirmed the judgment, agreeing with the District Court's ruling that § 717 (c) contemplates not a trial *de novo* but the "intermediate scope of inquiry expounded in Hackley v. Johnson . . . ." *Chandler* v. *Johnson,* 515 F. 2d 251, 255 (CA9). We granted certiorari to resolve a conflict among the Circuits concerning the nature of the judicial proceeding provided by § 717 (c).[4] 423 U. S. 821.

## II

We begin with the language of the statute. Section 717 (c), 42 U. S. C. § 2000e–16 (c) (1970 ed., Supp. IV),

---

[3] The District Court in *Hackley* had held that even if that "exacting standard" were not met, a full trial *de novo* would not necessarily be required. Rather a district court could, "in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record." 360 F. Supp., at 1252.

[4] Four Courts of Appeals have held that § 717 (c) gives federal employees the right to a trial *de novo* in the district court. *Abrams* v. *Johnson,* 534 F. 2d 1226 (CA6); *Caro* v. *Schultz,* 521 F. 2d 1084 (CA7); *Hackley* v. *Roudebush,* 171 U. S. App. D. C. 376, 520 F. 2d 108; *Sperling* v. *United States,* 515 F. 2d 465 (CA3). Three other Courts of Appeals have held that federal employees are not generally entitled to trials *de novo. Haire* v. *Calloway,* 526 F. 2d 246 (CA8); *Chandler* v. *Johnson,* 515 F. 2d 251 (CA9) (opinion below); *Salone* v. *United States,* 511 F. 2d 902 (CA10).

states that within 30 days after notice of final adverse administrative action on a federal employee's discrimination complaint by either the employing agency or the Civil Service Commission (in the event a permissive appeal is taken), or after 180 days of delay by the agency or the Commission, the employee "may file a civil action as provided in section 706, in which civil action the head of the department agency, or unit, as appropriate, shall be the defendant." Section 717 (d), 42 U. S. C. § 2000e–16 (d) (1970 ed., Supp. IV), goes on to specify that "[t]he provisions of section 706 (f) through (k), as applicable, shall govern civil actions brought hereunder."

Section 706 (f) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–5 (f) (1970 ed., Supp. IV), authorizes the Equal Employment Opportunity Commission (EEOC) to bring "civil actions" on behalf of private sector employees in federal district court.[5] Alternatively, § 706 (f)(1) authorizes an individual employee to sue on his own behalf if a specified period of delay has elapsed or if the EEOC has declined to represent him on the basis of its initial determination that "there is not reasonable cause to believe that the charge is true . . . ." § 706 (b), 42 U. S. C. § 2000e–5 (b) (1970 ed., Supp. IV). Sections 706 (f) through (k), 42 U. S. C. §§ 2000e–5 (f) through (k) (1970 ed. and Supp. IV), provide specific rules and guidelines for private-sector "civil actions."

It is well established that § 706 of the Civil Rights Act of 1964 accords private-sector employees the right to *de novo* consideration of their Title VII claims. *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36; *McDonnell*

---

[5] The Attorney General of the United States is given responsibility for instituting Title VII civil actions on behalf of employees of state governments, governmental agencies, or political subdivisions. § 706 (f)(1), 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. IV).

*Douglas Corp.* v. *Green,* 411 U. S. 792, 798–799; *Norman* v. *Missouri Pacific R. Co.,* 414 F. 2d 73, 75 n. 2 (CA8). The "employee's statutory right to a trial *de novo* under Title VII [of the Civil Rights Act of 1964] . . . ," *Alexander* v. *Gardner-Denver Co., supra,* at 38, embodies a congressional decision to "vest federal courts with plenary powers to enforce the [substantive] requirements [of Title VII] . . . ." *Id.,* at 47.

The 1972 amendments to the 1964 Act added language to § 706 which reflects the *de novo* character of the private sector "civil action" even more clearly than did the 1964 version.[6] Section 706 (f)(4), 42 U. S. C. § 2000e–5 (f)(4) (1970 ed., Supp. IV), for instance, requires the chief judge of the district in which a "civil action" is pending to "immediately . . . designate a judge in such district to hear and determine the case." The judge so designated must "assign the case for hearing at the earliest practicable date . . . ." § 706 (f)(5). If the case has not been "scheduled . . . for trial within one hundred and twenty days after issue has been joined," then the designated judge may appoint a special master to hear it. *Ibid.* And, as under the 1964 version, if the district court "finds" that the respondent has intentionally committed an unlawful employment practice, then the court may order appropriate relief. § 706 (g), 42 U. S. C. § 2000e–5 (g) (1970 ed., Supp. IV). The terminology employed by Congress—"assign the case for hearing," "scheduled . . . for trial," "finds"—indicates clearly that the "civil action" to which private-sector employees are entitled under the amended version of Title VII is to be a trial *de novo.*

Since federal-sector employees are entitled by § 717 (c) to "file a civil action as provided in section 706 [42 U. S. C. § 2000e–5 (1970 ed., Supp. IV)]" and since

---

[6] Civil Rights Act of 1964, § 706, 78 Stat. 259.

the civil action provided in § 706 is a trial *de novo*, it would seem to follow syllogistically that federal employees are entitled to a trial *de novo* of their employment discrimination claims. The Court of Appeals, however, held that a contrary result was indicated by the words "as applicable" in § 717 (d) and by the legislative history of § 717, and in support of that position the respondents further argue that routine *de novo* trials of federal employees' claims would clash with the 1972 Act's delegation of enforcement responsibilities to the Civil Service Commission and would contravene this Court's view that "*de novo* review is generally not to be presumed." *Consolo* v. *FMC*, 383 U. S. 607, 619 n. 17.

## A. *The Meaning of the Phrase "As Applicable"*

The opinion of the District Court for the District of Columbia in *Hackley* v. *Johnson*, relied on by the Court of Appeals here, expressed the view that the phrase "as applicable" in § 717 (d) evidences a congressional intent to restrict or qualify the right to a *de novo* proceeding granted by § 717 (c). 360 F. Supp., at 1252 n. 9. A careful reading of § 717 (d) and the provisions to which it refers indicates, however, that the phrase was intended merely to reflect the fact that certain provisions in §§ 706 (f) through (k) pertain to aspects of the Title VII enforcement scheme that have no possible relevance to judicial proceedings involving federal employees.

Section 717 (d) states that "[t]he provisions of section 706 (f) through (k), as applicable, shall govern civil actions brought hereunder." Sections 706 (f) through (k) set forth specific procedures and guidelines to be followed in private-sector "civil actions." Several of these procedures could not possibly apply to civil actions involving federal employees. Section 706 (f)(1), for instance, provides that in the private sector the EEOC "may bring a civil action against any respondent

not a government, governmental agency, or political sub-division" and that the Attorney General of the United States may bring a civil action for employment discrimi-nation against a state government, agency, or political subdivision. The individual complainant retains the right to intervene in suits brought by the EEOC or the Attorney General. In the case of a "civil action" maintained by an individual complainant against a private or state governmental employer, the EEOC or the Attorney General, respectively, may be permitted to inter-vene "upon certification that the case is of general public importance." These provisions, allowing suits and per-missive intervention by the EEOC or the Attorney General, could have no possible application to "civil actions" under § 717 (c), because the individual federal employee or job applicant is the only party who can institute and maintain a "civil action" under that subsection.

Similarly, the provision in § 706 (f) (2) permitting the EEOC or the Attorney General to "bring an action for appropriate temporary or preliminary relief pending final disposition" of a charge where the EEOC has "con-clude[d] on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the pur-poses of this Act" could not possibly apply without modi-fication to "civil actions" involving federal employees, because the EEOC is given no general responsibility for investigating or prosecuting the complaints of federal employees.

The most natural reading of the phrase "as applicable" in § 717 (d) is that it merely reflects the inapplicability of provisions in §§ 706 (f) through (k) detailing the en-forcement responsibilities of the EEOC and the Attorney General.[7] We cannot, therefore, agree with the view

---

[7] See *Hackley* v. *Roudebush,* 171 U. S. App. D. C., at 387–388, 520 F. 2d, at 119–120.

expressed by the District Court in *Hackley* v. *Johnson, supra,* and relied on by the Court of Appeals here, that Congress used the words "as applicable" to voice its intent to disallow trials *de novo* by aggrieved federal employees who have received prior administrative hearings. As the Court of Appeals for the District of Columbia Circuit held in reversing *Hackley* v. *Johnson, supra,* such an interpretation of the phrase "as applicable" would require a strained and unnatural reading of §§ 706 (f) through (k). *Hackley* v. *Roudebush,* 171 U. S. App. D. C., at 389, 520 F. 2d, at 121. This Court pointed out in *Lynch* v. *Alworth-Stephens Co.,* 267 U. S. 364, 370, that " 'the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.' " To read the phrase "as applicable" in § 717 (d) as obliquely qualifying the federal employee's right to a trial *de novo* under § 717 (c) rather than as merely reflecting the inapplicability to § 717 (c) actions of provisions relating to the enforcement responsibilities of the EEOC or the Attorney General would violate this elementary canon of construction.

### B. *Legislative History*

The legislative history of the 1972 amendments reinforces the plain meaning of the statute and confirms that Congress intended to accord federal employees the same right to a trial *de novo* as is enjoyed by private-sector employees and employees of state governments and political subdivisions under the amended Civil Rights Act of 1964.

Two themes dominated the debates, proposals, and committee reports which preceded the enactment of the Equal Employment Opportunity Act of 1972. The first was the inadequacy of the individually instituted and

maintained trial *de novo* as an enforcement technique in the private sector under the Civil Rights Act of 1964.[8] The second was federal employees' lack of adequate internal safeguards against employment discrimination and Congress' perception of their lack of access to the courts to raise claims of job discrimination.[9]

[8] As stated in the Senate Report:

"The most striking deficiency of the 1964 Act is that the EEOC does not have the authority to issue judicially enforceable orders to back up its findings of discrimination. In prohibiting discrimination in employment based on race, religion, color, sex or national origin, the 1964 Act limited the Commission's enforcement authority to 'informal methods of conference, conciliation and persuasion.'

"As a consequence, unless the Department of Justice concludes that a pattern or practice of resistance to Title VII is involved, the burden of obtaining enforceable relief rests upon each individual victim of discrimination, who must go into court as a private party, with the delay and expense that entails, in order to secure the rights promised him under the law. Thus, those persons whose economic disadvantage was a prime reason for enactment of equal employment opportunity provisions find that their only recourse in the face of unyielding discrimination is one that is time consuming, burdensome, and all too often, financially prohibitive." Senate Report 4.

[9] The Senate Report stated:

"The testimony before the Labor Subcommittee reflected a general lack of confidence in the effectiveness of the complaint procedure on the part of Federal employees. Complaints have indicated skepticism regarding the Commission's record in obtaining just resolutions of complaints and adequate remedies. This has, in turn, discouraged persons from filing complaints with the Commission for fear that doing so will only result in antagonizing their supervisors and impairing any future hope of advancement." *Id.*, at 14.

"The testimony of the Civil Service Commission notwithstanding, the committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U. S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt." *Id.*, at 16.

In 1971, the House Committee on Education and Labor and the Senate Committee on Labor and Public Welfare reported out bills designed to remedy these deficiencies. The proposed bills, H. R. 1746 and S. 2515, gave the EEOC cease-and-desist powers in the private sector while retaining the private-sector complainant's pre-existing right to a trial *de novo* in certain instances.[10] The grant of cease-and-desist power to the EEOC provoked strong dissenting statements in both committee reports. While nearly all members of both committees agreed that the EEOC should be given enforcement powers in the private sector,[11] there was sharp disagreement over whether the EEOC should be given the power merely to institute *de novo* suits in federal trial courts on behalf of employees or the power actually to adjudicate discrimination controversies subject only to review on a substantial-evidence basis in the federal courts of appeals.

The dissenting members of the two committees favored the trial *de novo* approach. As Senator Dominick put it in a minority statement in the Senate Report:

"The issue is no longer whether we need enforcement powers for Title VII, but rather what form

---

[10] Under both committee bills, the private-sector employee could bring a civil action within 60 days after the EEOC gave notice that it had dismissed the charge of employment discrimination or that 180 days had elapsed from the filing of the charge without the EEOC having issued a complaint or having entered into an acceptable conciliation agreement. H. R. 1746, 92d Cong., 1st Sess., § 8 (j) (1971) (hereinafter cited as H. R. 1746 or House Committee Bill); S. 2515, 92d Cong., 1st Sess., § 4 (a) (1971) (hereinafter cited as S. 2515 or Senate Committee Bill).

[11] Representatives Ashbrook and Landgrebe did not favor granting the EEOC any enforcement authority. H. R. Rep. No. 92–238, p. 70 (1971) (hereinafter cited as House Report).

and scope of enforcement is needed to best protect the rights of all parties involved. To accomplish this end the Senate is given two types of enforcement machinery to choose from—vesting EEOC with cease and desist powers or giving EEOC the authority to sue directly in Federal Courts.

". . . Determination of employment civil rights deserves and requires non-partisan judgment. This judgment is best afforded by Federal court judges who, shielded from political influence by life tenure, are more likely to withstand political pressures and render their decisions in a climate tempered by judicial reflection and supported by historical judicial independence." [12]

In response to these criticisms and in justification of their contrary position, the majority members of the two committees set forth in considerable detail their reasons for choosing the approach of agency adjudication with appellate court review. The House committee majority thought that the EEOC was "better equipped to handle the complicated issues involved in employment discrimination cases" and "better suited to rapid resolution of such complex issues than are Courts." In addition, the majority thought that an administrative tribunal would offer procedural advantages in that it would be "less subject to technical rules governing such matters as pleadings and motion practice . . . and . . . less constrained by formal rules of evidence . . . ." [13] The Senate Report spelled out in even greater detail the perceived differences between "enforcement by district court trials rather than through agency hearings followed by appel-

---

[12] Senate Report 85. Similar minority views were expressed in the Report of the House committee. House Report 58–63.

[13] *Id.,* at 10–11.

late court review," [14] stressing the delays that would be occasioned by court trials and the need for administrative expertise in recognizing and remedying complex forms of employment discrimination.[15] The Report stated that the committee had given "full and careful consideration" to an "alternative measure providing for court enforcement for title VII" but that that proposal had been rejected in favor of the administrative agency approach.[16]

It was against this backdrop of focused debate on the issue of administrative agency versus wholly judicial enforcement machinery in the area of discrimination in private employment that the two committees proposed extending to a federal employee the right to file a "civil action" if "aggrieved" by his employing agency's action in dealing with his complaint of discrimination. The fact that the federal employee, prior to filing such a "civil action," would have enjoyed the benefit of improved internal safeguards, including "appropriate procedures for an impartial [agency] adjudication of the complain[t]," [17] might well have provided a rationale for reposing primary adjudicative authority in the appropriate federal agency rather than in the district courts. But the two committees clearly chose to permit *de novo* judicial trial of such complaints rather than mere judicial review of employing agency determinations: In both the House and Senate Committee Bills, the sections which accorded an aggrieved federal employee the right to file a "civil action" following adverse agency action referred not to the substantial-evidence review provisions applicable to EEOC cease-and-desist orders but rather to

---

[14] Senate Report 18.
[15] *Id.*, at 17–19.
[16] *Id.*, at 17.
[17] House Report 26.

other provisions which retained the private-sector employee's right to a trial *de novo* in specified circumstances.[18] It is inconceivable that the two congressional committees, which were keenly aware of the consequences of vesting in an administrative agency rather than in the federal courts the primary adjudicative responsibility, did not act in a knowing and deliberate manner in thus equating a federal employee's "civil action" with private-sector plenary trials and in eschewing any reference to the private-sector provisions of the proposed legislation which provided for agency adjudication subject only to review on a substantial-evidence basis in the federal courts of appeals.[19]

In short, the bills reported out of the Senate and House committees and the accompanying Reports reveal a thorough and meticulous consideration of the question whether an administrative agency or a court should be given primary adjudicative responsibility for particular

---

[18] The House Committee Bill, *supra*, n. 10, provided in relevant part that a federal employee, if aggrieved by final administrative disposition of his complaint, "may file a civil action as provided in section 715 . . . ." § 11. Section 715 of the proposed bill preserved the private-sector employee's right to institute a trial *de novo* in certain limited circumstances. § 8 (j). See n. 10, *supra*.

The Senate Committee Bill, *supra*, n. 10, provided in relevant part that a federal employee, if aggrieved by final administrative disposition of his complaint or by failure to take action on his complaint, "may file a civil action as provided in section 706 (q) . . . ." § 11. Section 706 (q) of the proposed bill preserved the private-sector employee's right to a trial *de novo* in specified instances. § 4 (a). See n. 10, *supra*.

[19] The House and Senate Reports as well as the Committee Bills themselves evince a detailed awareness of the interaction in the private sector of the new cease-and-desist remedy and the pre-existing right to a trial *de novo*. See House Committee Bill § 8 (j); House Report 12; Senate Committee Bill § 4 (a); Senate Report 24.

categories of Title VII complaints and an unambiguous choice to grant federal employees the right to plenary trials in the federal district courts.[20]

The House Committee Bill was opposed on the floor of the House on the ground that it placed primary adjudicative responsibility over private-sector Title VII complaints in an agency which was also responsible for prosecuting such complaints. Opponents contended that such a commingling of functions would bias the agency's adjudications.[21] This argument prevailed, and H. R. 1746 was amended on the floor by H. R. 9247,[22] which granted the EEOC the right to file private-sector "civil actions" in district court but not the power to issue cease-and-desist orders.[23] The amendment changed H. R. 1746 in one other important respect: It deleted the provisions

---

[20] The respondents argue that because private-sector employees enjoyed only a conditional right to plenary trials under the Senate Committee Bill and because the committee intended to give aggrieved federal employees the same "rights . . . in the courts as are granted to individuals in the private sector under title VII," Senate Report 16, it follows that the Senate committee intended federal employees to have trials *de novo* only in circumstances analogous to those where private-sector employees would enjoy the same right—*i. e.*, where the responsible agency had dismissed the charge without a hearing or where a sufficient period of delay had elapsed from the filing of the charge. This argument overlooks the fact that the provision in the Senate Committee Bill creating a federal employee's right to bring a "civil action" contained no reference to the substantial-evidence review provisions in the draft legislation but referred only to the provisions which pertained to private-sector trials *de novo*.

[21] *E. g.*, 117 Cong. Rec. 31958–31959 (1971) (remarks of Rep. Martin); *id.*, at 31969–31970 (remarks of Rep. Railsback); *id.*, at 31972–31973 (remarks of Rep. Erlenborn); *id.*, at 32091–32092 (remarks of Rep. Ford); *id.*, at 32106 (remarks of Rep. Broomfield); *id.*, at 32107–32108 (remarks of Rep. Shoup); *id.*, at 32109–32110 (remarks of Rep. Fisher).

[22] *Id.*, at 32111–32112.

[23] H. R. 9247, 92d Cong., 1st Sess., § 3 (c) (1971).

extending Title VII to federal employees.[24] As amended, H. R. 1746 passed the House.[25]

The Senate Committee Bill, like its House counterpart, was strongly opposed on the floor. As in the House, controversy centered on whether agency adjudication with limited appellate judicial review in the federal appellate courts should be the technique by which the EEOC would enforce Title VII in the private sector.[26] Early in the four-week Senate floor debate which preceded passage of S. 2515, Senator Dominick introduced an amendment which would replace the EEOC's cease-and desist authority with a right to institute *de novo* proceedings in the federal district courts on behalf of private-sector employees.[27] This amendment conformed to the dissenting views he had expressed in the Senate Report.[28] The principal aim of the amendment was to separate prosecutorial from adjudicative functions in private-sector Title VII proceedings.[29]

A central theme of Senator Dominick's argument, stressed repeatedly in the floor debate, was that the Committee Bill already contemplated the resolution of federal employees' claims through district court and not agency

[24] See *id.;* S. Conf. Rep. No. 92-681, pp. 20-21 (1972) (hereinafter referred to as Conference Report).

[25] 117 Cong. Rec. 32113 (1971).

[26] *E. g.,* 118 Cong. Rec. 311-312 (1972) (remarks of Sen. Ervin); *id.,* at 595 (remarks of Sen. Tower); *id.,* at 731-732 (remarks of Sen. Saxbe); *id.,* at 732 (remarks of Sen. Brock); *id.,* at 735 (remarks of Sen. Williams); *id.,* at 928-929 (remarks of Sen. Mondale); *id.,* at 930 (remarks of Sen. Javits); *id.,* at 931-932 (remarks of Sen. Allen); *id.,* at 933 (remarks of Sen. Thurmond); *id.,* at 943-944 (remarks of Sen. Talmadge); *id.,* at 944 (remarks of Sen. Chiles); *id.,* at 1384 (remarks of Sen. Weicker).

[27] *Id.,* at 591-592.

[28] See Senate Report 86-87.

[29] 118 Cong. Rec. 592-593 (1972) (remarks of Sen. Dominick).

adjudication. Speaking of the Senate committee's deliberations, Senator Dominick stated that when the committee had "examined the Federal employee situation" he had

"pointed out again that we were creating an agency czar in the EEOC which could determine personnel policies in all the other Federal agencies of the Government. I doubted the wisdom of creating such an omnipotent agency. After some discussion on this . . . we were able to work out an agreement whereby a Federal employee who feels he is discriminated against can go through his agency, and if he is still dissatisfied, he is empowered to bring suit in Federal court or through the existing Civil Service Board of Appeals and Reviews to Federal court. So on two of the major groups of employees covered by this legislation; namely, State and local employees on the one hand, and Federal employees on the other, the committee itself agreed to grievance remedy procedures through the Federal district courts; yet with the private employee they say, 'No, you cannot have that. We will have an agency that can do it all by itself.' That is discrimination in and of itself, right within the bill; and it strikes me that one of the first things we have to do is at least to put employees holding their jobs, be they government or private employees, on the same plane so that they have the same rights, so that they have the same opportunities, and so that they have the same equality within their jobs, to make sure that they are not being discriminated against and have the enforcement, investigatory procedure carried out the same way.

.     .     .     .     .

"As I said earlier, it seems wrong to me to say to an aggrieved employee, 'Certainly we will hear your

case. We will do the investigating. We will bring the charges. We will do everything else, but you will not get a decision for over 2 years.' That is not justice. This is not equal employment opportunity. But if we have the investigator saying that this is a legitimate complaint, and that it will be brought to the district court and will get priority treatment there, we can get the matter decided in half the time it would take in any other way.

"It strikes me that this is right on principle. It is right in terms of administrative procedures. It conforms to what we did with State and local employees and with Federal employees." [30]

Senator Dominick reiterated the theme of remedial disparity throughout the floor debates, arguing for equal treatment of private-sector and federal-sector complainants: Since the latter were entitled to plenary adjudication of their claims by a federal district court, rather than mere appellate review on a substantial-evidence basis following agency adjudication, he contended, the former should be treated similarly.[31]

Senator Dominick's amendment was eventually adopted [32] and S. 2515, as amended, passed the Senate.[33] The House had already passed the amended version of H. R. 1746, which differed from the amended Senate Committee Bill in that it did not apply to federal employees. The bills accordingly went to a conference committee, which adopted the Senate Committee Bill's provision extending Title VII to federal employees.[34] The conference bill was enacted by the Senate and the House.

Since the federal employee provisions of the Senate

---

[30] *Id.*, at 594.

[31] *Id.*, at 595, 942, 943, 3389, 3809, 3967.

[32] *Id.*, at 3979–3980.

[33] *Id.*, at 4944.

[34] Conference Report 1, 10–11, 20–21.

bill were eventually adopted by the conference committee and passed by Congress, the legislative history of that bill is the most helpful on the issue presented here.[35] The sequence of debate, amendment, and Senate passage of S. 2515 shows unmistakably that the Senate decided to provide both private- and federal-sector employees the adjudicative mechanism which the Senate committee had advocated for federal-, but not private-sector, employees. No changes were made or even proposed with respect to the committee's choice to allow federal employees judicial trials rather than "substantial evidence" review of administrative dispositions of their discrimination claims. On the contrary, it was the federal-sector *de novo* procedure which served as the model for Senator Dominick's proposed alteration of private-sector enforcement provisions. The passage of the Dominick amendment and the subsequent approval of S. 2515 by the Senate achieved the parity which Senator Dominick had advocated—judicial trial *de novo* for private as well as federal employees.[36]

---

[35] See *Hackley* v. *Roudebush,* 171 U. S. App. D. C., at 413, 520 F. 2d, at 145; *Sperling* v. *United States,* 515 F. 2d, at 473.

[36] The respondents argue that a statement in the floor debate by Senator Williams and a statement purportedly made in that debate by Senator Cranston indicate that Congress did not intend to give federal employees the right to plenary judicial trials but only the right to record review of agency proceedings. Near the close of the debate on S. 2515 Senator Williams spoke as follows:

"Finally, written expressly into the law is a provision enabling an aggrieved Federal employee to file an action in U. S. District Court for a *review of the administrative proceeding record* after a final order by his agency or by the Civil Service Commission, if he is dissatisfied with that decision. Previously, there have been unrealistically high barriers which prevented or discouraged a Federal employee from taking a case to court. This will no longer be the case. There is no reason why a Federal employee should not have *the same private right of action enjoyed by individuals in the*

The Court of Appeals held that "the district judge faced with a demand for a trial de novo is entitled to determine, at a pretrial conference or otherwise, why the plaintiff believes that a trial de novo is necessary," 515 F. 2d, at 255, and concluded that the petitioner had presented "nothing before the district court to indicate that

---

*private sector,* and I believe that the committee has acted wisely in this regard." 118 Cong. Rec. 4922 (1972) (emphasis added).

Senator Williams had an expanded version of this statement printed in the Congressional Record. *Id.,* at 4923.

Despite the fact that Senator Williams was one of the original sponsors of S. 2515 and its floor manager, we decline to give controlling weight to the quoted statement for three reasons. First, it is self-contradictory: While characterizing the federal-sector "civil action" as a "review of the administrative proceeding record," Senator Williams stated in the same breath that "[t]here is no reason why a Federal employee should not have the same private right of action enjoyed by individuals in the private sector . . . ." Yet the private right of action enjoyed by individuals in the private sector was to be a trial *de novo* under the pending bill. Second, the federal-sector provision before the Senate was precisely that which the Senate committee had proposed. Indeed, Senator Williams specifically applauded the committee for having "acted wisely in this regard." Yet the committee clearly chose to grant federal-sector employees the right to a trial *de novo* and omitted any reference to the record review provisions it advocated for private-sector cease-and-desist orders. The committee's unambiguous and unaltered treatment of federal-sector "civil actions" is more probative of congressional intent than the casual remark of a single Senator in the floor debate. Cf. *United States* v. *Automobile Workers,* 352 U. S. 567, 585; *Sperling* v. *United States, supra,* at 480. Finally, as Senator Williams himself acknowledged earlier in the debate, Senator Dominick rather than he was "[t]he principal architect of . . . changes dealing with the civil service area . . . ." 118 Cong. Rec. 595 (1972). That statement was made immediately after Senator Dominick's discussion of the Senate committee's decision to grant federal employees the right to bring "civil actions" in district court rather than the right to have administrative adjudication of their claims with substantial-evidence review in the courts. *Id.,* at 594.

The other statement relied on by the respondents was purportedly

a useful purpose would be served by having a trial de novo." *Ibid.* This approach substantially parallels the holding in *Hackley* v. *Johnson:*

> "The trial *de novo* is not required in all cases. The District Court is required by the Act to examine the administrative record with utmost care. If it

made by Senator Cranston during the final portion of the floor debate. The daily edition of the Congressional Record shows Senator Cranston as having made the following statement:

"For the first time, [my Federal EEO amendment would] permit Federal employees to sue the Federal Government in discrimination cases—under the theory of Federal sovereign immunity, courts have not generally allowed such suits—and to bring suit either prior to or after CSC review of the agency EEO decision in the case. As with other cases brought under title VII of the Civil Rights Act of 1964, Federal district court *review would be based on the agency and/or CSC record and would not be a trial de novo.*" 118 Cong. Rec. S 2287 (daily ed. Feb. 22, 1972) (emphasis added).

Approximately a year after the debate and 10 months after the enactment of the Equal Employment Opportunity Act of 1972, Senator Cranston informed the Senate that "the word 'not' was misplaced" in the daily edition and that when "set forth . . . in the correct manner" the italicized portion of the statement would read "review would not be based on the agency and/or CSC record and would be a trial de novo." 119 Cong. Rec. S 1219 (daily ed. Jan. 23, 1973). The language was so corrected, see 118 Cong. Rec. 4929. We agree with the respondents that this belated correction is not probative. But we cannot agree with their further argument and the view of the Eighth Circuit, *Haire* v. *Calloway,* 526 F. 2d, at 248 n. 4, that the uncorrected version, as originally printed in the daily edition of the Congressional Record, *is* probative. As with Senator Williams' remark, the uncorrected statement is self-contradictory: Senator Cranston first equated federal- and private-sector "civil actions" and then went on to characterize a federal-sector suit as "not . . . a trial de novo." Yet the private-sector suit *was* to be a trial *de novo.* And, as with Senator Williams' remark, the Senate committee's decision to equate federal-sector "civil actions" with private-sector trials *de novo* is more probative of congressional intent than a fleeting remark in the floor debate.

determines that an absence of discrimination is affirmatively established by the clear weight of the evidence in the record, no new trial is required. If this exacting standard is not met, the Court shall, in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record." 360 F. Supp., at 1252.

Nothing in the legislative history indicates that the federal-sector "civil action" was to have this chameleon-like character, providing fragmentary *de novo* consideration of discrimination claims where "appropriate," *ibid.*, and otherwise providing record review. On the contrary, the options which Congress considered were entirely straightforward. It faced a choice between record review of agency action based on traditional appellate standards and trial *de novo* of Title VII claims. The Senate committee selected trial *de novo* as the proper means for resolving the claims of federal employees. The Senate broadened the category of claims entitled to trial *de novo* to include those of private-sector employees, and the Senate's decision to treat private- and federal-sector employees alike in this respect was ratified by the Congress as a whole.

## C. *Presumption Against De Novo Review*

Given the clear expression of congressional intent, as revealed in both the plain language of § 717 and the legislative history of the 1972 amendments, we find unpersuasive the respondents' reliance on decisions by this Court indicating that "*de novo* review is generally not to be presumed." *Consolo* v. *FMC,* 383 U. S., at 619 n. 17; *United States* v. *Carlo Bianchi & Co.,* 373 U. S. 709, 715.

*Consolo* involved review of agency action under provisions of the Administrative Procedure Act giving "a reviewing court authority to 'set aside agency action,

findings, and conclusions found to be (1) arbitrary, capricious, [or] an abuse of discretion . . . [or] (5) unsupported by substantial evidence . . . .' " 383 U. S., at 619. In this context, the Court observed: "We do not read the opinion below as asserting that the Court of Appeals, in a direct review proceeding, may conduct a *de novo* review of the equities of a reparation award. We find nothing in the Shipping Act, the Hobbs Act, or the Administrative Procedure Act that would authorize a *de novo* review in these circumstances, and in the absence of specific statutory authorization, a *de novo* review is generally not to be presumed." *Id.*, at 619 n. 17. Here, by contrast, there is a "specific statutory authorization" of a district court "civil action," which both the plain language of the statute and the legislative history reveal to be a trial *de novo.*[37]

---

[37] *United States* v. *Carlo Bianchi & Co.*, 373 U. S. 709, involved review of agency action under the Wunderlich Act, which provided that a governmental decision on a question of fact arising under a "disputes" clause of a Government contract should be final and conclusive " 'unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.' " *Id.*, at 714. The Court held that this language indicated that Congress intended to limit review to the administrative record and observed that even "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held." *Id.*, at 715. Here Congress has not "simply provided for review" but has affirmatively chosen to grant federal employees the right to maintain a trial *de novo.*

In most instances, of course, where Congress intends review to be confined to the administrative record, it so indicates, either expressly or by use of a term like "substantial evidence," which has "become a term of art to describe the basis on which an administrative record is to be judged by a reviewing court." *Ibid.* *E. g.*, 5 U. S. C. § 706 (scope-of-review provision of Administrative Procedure Act); 12 U. S. C. § 1848 (scope-of-review

The respondents' contention that administrative dispositions of federal employee discrimination complaints would, unlike arbitral decisions under collective-bargaining agreements or preliminary EEOC findings of "no reasonable cause," typically furnish an adequate basis for "substantial evidence" review cannot overcome the clear import of the statutory language and the legislative history. The Congress was aware of the fact that federal employees would have the benefit of "appropriate procedures for an impartial [agency] adjudication of the complain[t]," [38] and yet chose to give employees who had been through those procedures the right to file a *de novo* "civil action" equivalent to that enjoyed by private-sector employees. [39] It may well be, as the respondents have argued, that routine trials *de novo* in the federal courts will tend ultimately to defeat, rather than to

provision applicable to certain orders of the Board of Governors of the Federal Reserve System); 15 U. S. C. § 21 (c) (scope-of-review provision applicable to certain orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Federal Reserve Board, and the Federal Trade Commission); 21 U. S. C. § 371 (f) (3) (scope-of-review provision applicable to certain orders of the Secretary of Health, Education, and Welfare).

[38] House Report 26.

[39] The goal may have been to compensate for the perceived fact that "[t]he Civil Service Commission's primary responsibility over all personnel matters in the Government . . . create[s] a built-in conflict of interest for examining the Government's equal employment opportunity program for structural defects which may result in a lack of true equal employment opportunity." Senate Report 15. Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial *de novo*. See Fed. Rule Evid. 803 (8) (C). Cf. *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 60 n. 21. Moreover, it can be expected that, in the light of the prior administrative proceedings, many potential issues can be eliminated by stipulation or in the course of pretrial proceedings in the District Court.

advance, the basic purposes of the statutory scheme. But Congress has made the choice, and it is not for us to disturb it.

Since the Court of Appeals in this case erroneously concluded that § 717 (c) does not accord a federal employee the same right to a trial *de novo* as private-sector employees enjoy under Title VII, its judgment must be reversed and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*