435 F.Supp. 816 (1977)
Ferdinand BUFFINGTON, Plaintiff,
v.
DEFENSE MAPPING AGENCY, and Vice Admiral Shannon D. Cramer, Director, Defense Mapping Agency, Defendants.
No. 76-678C(1).
United States District Court, E. D. Missouri, E. D.
August 2, 1977.
*817 Harold L. Whitfield, Freeman, Whitfield, Montgomery & Walton, St. Louis, Mo., for plaintiff.
Jean C. Hamilton, Asst. U. S. Atty., St. Louis, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Findings of Fact
MEREDITH, Chief Judge.
Plaintiff, a Negro male citizen of the United States and resident of the State of Missouri, was at all times relevant herein, an employee of defendant, Defense Mapping Agency, and the individual defendant, the Director of the Defense Mapping Agency. In April 1974, while employed by defendants as a Cartographer (Photogrammetry) GS-1370-11, PD # OMO 31 (MDD-3), plaintiff received a supervisory appraisal, administered by Hoffman, plaintiff's first level supervisor. Plaintiff's score was reviewed by Hoffman and Hummel, plaintiff's second level supervisor, at a meeting attended by other supervisory cartographers. As a result of this review, plaintiff's score was raised a few points to a final score of seventy-eight. Hoffman discussed the final appraisal score with plaintiff, reviewing the individual elements.
The "Supervisor's Appraisal" evaluates productivity, promptness, skills, motivation, quality of work, and other similar aspects of an employee's performance. Plaintiff's average score was consistent with his previous and subsequent appraisal scores, and was average in comparison with the other GS-11 Cartographers in his section, each of whom was white. The appraisal score, with other factors, makes up the figure on the Merit Promotion Register which is used in determining eligibility for promotion.
The agency provides procedures for grievances regarding appraisal scores and position classification, and plaintiff has been requested to implement these procedures, but has not done so.
On May 9, 1974, plaintiff filed an informal Equal Employment Opportunity complaint. Despite counseling, a formal complaint was filed June 13, 1974, against the Positional Data Division, Defense Mapping Agency, Aerospace Center. An investigation was conducted. In a letter to plaintiff, dated October 16, 1974, the agency proposed a finding of no racial discrimination, and plaintiff responded requesting a hearing on the complaint. A hearing was held December 11, 1974, in St. Louis, Missouri, before an EEO Complaints Examiner, who found, on March 5, 1975, that plaintiff's allegations of racial discrimination were not supported by the evidence. The Director of the Defense Mapping Agency informed plaintiff, on August 8, 1975, of his decision comporting with the EEO Complaints Examiner's recommendation, and advised him of his right to appeal. Plaintiff filed an appeal with the Civil Service Commission Appeals Review Board on August 13, 1975, and on June 25th the Board issued a decision finding that the evidence did not support the plaintiff's claim of discrimination. Plaintiff filed this action on July 28, 1976.
At the administrative hearing, plaintiff stated that his complaint about the appraisal, "was only a vehicle to initiate this discrimination *818 action, complaint action and no where have I made a statement that I felt that Mr. Hoffman or Mr. Hummel discriminated against me."
Hoffman has promoted two employees to the GS-12 level, and both were Negroes.
Total scores on the November 1974 promotion register ranged from 93 to 154, and the average and mean scores of Negroes and Caucasians were approximately the same: the average for both about 129, the mean about 128. Negroes were distributed in each quarter, one-sixth in both first and fourth quarters, and one-third in both second and third quarters.
There were 527 Caucasians and 37 Negroes in the total Merit Promotion Register, and of these, ten Caucasians and two Negroes were promoted. Of the 71 Caucasians who received a sufficiently high rating to be promoted, ten, or 14.1 percent, were, in fact, promoted. Of the three Negroes who received a sufficiently high rating to be promoted, two, or 66.6 percent, were, in fact promoted. Of the total number of Negroes, 5.4 percent were promoted, of the total number of Caucasians, 1.9 percent were promoted.

Conclusions of Law
The Court has jurisdiction over this matter under section 717 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16. Plaintiff, as a federal employee, is entitled to a trial de novo of his employment discrimination claim, Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); and the administrative record on plaintiff's employment discrimination claim may be admitted as evidence. Fed.Rule Evid. 803(8)(C); Id.
Plaintiff alleges that the Defense Mapping Agency engages in discrimination against Negroes in general, and against him in particular. He also claims that he was discriminated against and passed over for promotion, because he received an average score on the "Supervisor's Appraisal of Employee Current Performance", a score which was artificially low as a result of racial discrimination.
Plaintiff makes no claim that his supervisors, Hoffman and Hummel, discriminated against him, but rather alleges that the discrimination against him is a result of a general plan or practice of discriminating against Negroes by unfairly evaluating their work performances, and assigning them scores which are artificially low and minimize their chances to be promoted.
Where discrimination is alleged, the question is not the motives or methods of the employer, but what the actual effect of his employment practice is: whether the practical result is to exclude Negroes from a position by reason of their race. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Here, however, plaintiff fails to establish his prima facie case. Although statistical evidence allegedly showing a pattern or practice of discrimination may be admitted in an individual complaint, "it is not determinative of an employer's reason for the action taken against the individual grievant." King v. Yellow Freight System, Inc., 523 F.2d 879 (8th Cir. 1975); citing, Terrell v. Feldstein Co., Inc., 468 F.2d 910, 911 (5th Cir. 1972). Here discrimination is not shown, for although plaintiff was not promoted on his average score, two higher scoring Negroes were promoted, and the percentage rate of Negroes promoted was more than double the percentage rate of Caucasians promoted.
Evidence of pattern discrimination is admissible to support plaintiff's individual claim of discrimination, Marquez v. Omaha District Sales Office, Ford Div., 440 F.2d 1157 (8th Cir. 1971), and plaintiff seeks to demonstrate this pattern and practice with a series of statistical arguments, based upon figures from the Merit Promotion Register, GS-1370-12, Cartographer, dated November 1974. But the figures themselves do not support plaintiff's allegations of discrimination in the promotion practices of the agency.
The average and mean scores for Negroes and Caucasians were approximately the same, and Negroes were distributed in each *819 quarter of the scores. Plaintiff seeks to show that these figures are deceptive because Negroes are clustered in the average range, receiving neither the lowest scores, nor the highest, and the effect of this clustering is to give the appearance of fairness to the statistics, while effectively depriving Negroes of promotion by keeping them below the scoring area within which promotions are awarded. Assuming, arguendo, that there is discrimination in the scoring system which evaluates candidates for promotion, the promotion system must be measured only by its results. And Negroes have not, in fact, been deprived of promotion.
Of the Negroes who received a sufficiently high rating to be promoted, 66.6 percent were promoted, while of the Caucasians with sufficiently high ratings to be promoted, 14.1 percent were promoted. Of the total number of Negroes, 5.4 percent were promoted, while of the total number of Caucasians, 1.9 percent were promoted. When the promotion system is examined for its operation on an exclusionary basis, measuring the effect on Negroes and Caucasians separately, it is evident that the facts do not support a finding that a plan or practice of racial discrimination exists in the promotion practices of defendant. Green v. Missouri Pacific R. R., 523 F.2d 1290 (8th Cir. 1975).
Plaintiff also alleges that the supervisory evaluation was done without sufficient information, and that plaintiff's supervisors could not evaluate his performance properly because the work he performed was in a different job classification than the one to which he was assigned. If plaintiff's appraisal was incorrect for some reason (such as insufficient information or incorrect job classification) other than racial discrimination, his remedy does not lie with a civil action under 42 U.S.C. § 2000e et seq., but with a complaint through proper agency channels, which plaintiff has not initiated and does not allege would prove futile.
Plaintiff has not established that his average supervisory appraisal rating was artificially low as a result of racial discrimination by the defendants, that defendants have discriminated against him in employment because of race, or that defendants engage in a pattern or practice of racial discrimination. Accordingly, a judgment will be entered in favor of all defendants and against the plaintiff, and the cause will be dismissed with prejudice at the cost of the plaintiff.