Richard C. BARTEL, Plaintiff,

v.

UNITED STATES of America, FEDERAL AVIATION ADMINISTRATION, and Elizabeth Dole, Secretary of Transportation, Defendants.

Nos. 85 CV 4344, 85 CV 4412.

United States District Court, E.D. New York.

July 1, 1987.

J.E. McNeil, Washington, D.C., for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., Jeffrey Alan Coryell, Asst. U.S. Atty. (John M. Walsh, Office of the General Counsel, F.A.A., of counsel), for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

After a complex series of administrative and judicial determinations, plaintiff now moves for summary judgment on one of his claims of unlawful retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, and on his claim that the Federal Aviation Administration ("FAA") violated his rights under the Privacy Act of 1974, 5 U.S.C. § 552a.

The Privacy Act claim stems from "the actions of FAA officials informing persons who allegedly had no official need for the information that an internal agency investigation indicated that Bartel improperly obtained access to airman files of FAA inspectors and may have thereby violated the Privacy Act." *Bartel v. FAA*, 725 F.2d 1403, 1405 (D.C.Cir.1984).[1] Bartel requested the airman files to aid in the filing of an Equal Employment Opportunity Commission ("EEOC") claim of reverse discrimination.

Plaintiff's first Title VII claim, on which he seeks summary judgment, asserts that the FAA denied him GS–13 positions for which he was qualified, placing him instead in a GS–12 position, in retaliation for engaging in protected EEOC activity ("re-employment claim"). The second Title VII claim asserts that he was constructively discharged from the GS–12 position due to retaliatory actions inflicted upon him while in that position ("constructive discharge claim").

On June 20, 1980, plaintiff appealed his re-employment status as a GS–12 employee to the Merit Systems Protection Board's ("MSPB") Philadelphia field office. Exh. A to Coryell Aff. On October 16, 1980, the Presiding Official sustained the FAA's decision to re-employ plaintiff at the GS–12 grade level. Exh. A at p. 4.

Plaintiff filed two separate appeals with the MSPB's Philadelphia Regional Office contesting his subsequent removal from the GS–12 position for unauthorized absences and challenging the FAA's failure to process his resignation tendered prior to his removal. The Presiding Official joined these two cases on his own motion. Plaintiff asserted, *inter alia*, that his removal was improper in light of his attempt to resign and that the refusal to process his resignation and the removal itself were retaliatory in nature. Exh. B to Coryell Aff. at p. 7.[2] The Presiding Official sustained the FAA's decision to remove plaintiff from his GS–12 position for unauthorized absences, treating his claims of retaliation as af-

---

1. The underlying facts of the complaint are set out more fully in the decision of the D.C. Circuit Court of Appeals, familiarity with which is assumed. In a later decision, *Bartel v. FAA*, 617 F.Supp. 190 (D.D.C.1985), the District Court dis-missed plaintiff's Title VII and Privacy Act claims for improper venue.

2. This claim later evolved into plaintiff's constructive discharge claim.

firmative defenses to the removal action and then rejecting them for lack of evidence. *Id.* at pp. 3, 7.

Plaintiff then appealed each decision to the MSPB in Washington, D.C. On November 22, 1982, the MSPB joined the cases together pursuant to 5 U.S.C. § 7701(f)(2). Exh. 1 at p. 1. The MSPB held that the actions of plaintiff's former supervisor denying plaintiff consideration for GS–13 positions for which he was qualified constituted a "prohibited personnel practice" because they were intended to retaliate against plaintiff for exercising a "protected EEO appeal right." Memorandum in Support at pp. 2–3. The MSPB further found that plaintiff's resignation should have been accepted by the FAA and that his removal was, thus, improper. Exh. 1 at p. 13. The MSPB ultimately held that plaintiff's resignation was voluntary and did not, therefore, constitute a constructive removal. Exh. 1 at p. 14. The MSPB ordered the FAA to reconstruct the selection process for the GS–13 position in a manner free from all unlawful bias and directed that if plaintiff were selected for the job, he was to be appointed to the GS–13 position until the effective date of his resignation. Exh. 1 at p. 15. Dissatisfied with this result, plaintiff sought the EEOC's review of the MSPB's order pursuant to 5 U.S.C. § 7702.

On October 3, 1983, the EEOC issued a decision concurring "in the decision of the MSPB insofar as it found that [Bartel] was denied meaningful consideration for the GS–13 job in reprisal for his having exercised protected rights." Exh. C at p. 3. The EEOC held that the MSPB's decision was "tantamount to a finding of discrimination in violation of Title VII." *Id.* The EEOC, however, disagreed with the remedy awarded by the MSPB, finding that Bartel was entitled to a retroactive promotion with backpay. The EEOC then concurred in the MSPB's finding that Bartel's resignation did not constitute a constructive discharge and was, therefore, effective. *Id.*

On December 21, 1983, the MSPB concurred in and adopted the decision of the EEOC on the issue of the appropriate remedy for the re-employment claim. Exh. D at p. 3. This decision apprised plaintiff of his right to contest the MSPB's final decision on issues involving discrimination by filing a petition in a United States District Court, which right plaintiff subsequently exercised. According to the government, the backpay award has been paid subject to a setoff for the period of plaintiff's absence from the GS–12 position without official leave. Memorandum in Opposition to Motion for Summary Judgment (hereinafter "Memorandum in Opposition") at pp. 11–12.

*Title VII Claims*

Plaintiff moves for summary judgment "on his claim that defendants retaliated against him in violation of Title VII." Memorandum in Support of Motion for Summary Judgment (hereinafter "Memorandum in Support") at p. 4. Apparently the motion is limited to plaintiff's claim that defendants retaliated against him by re-employing him at a GS–12 rather than a GS–13 level. Memorandum in Support at p. 8. Plaintiff "reserves the right to litigate further ... his constructive discharge and the relief to which he is entitled."[3] Memorandum in Support at p. 8.

Plaintiff asserts that application of the doctrine of collateral estoppel entitles him to a judgment as a matter of law. Memorandum in Support at p. 3. Plaintiff reasons that as the administrative agencies have already concluded that defendants violated plaintiff's rights under Title VII, the findings of fact leading to that conclusion and the conclusion itself are binding on defendants as a matter of law. *Id.*

The government contends that the doctrine of collateral estoppel is inapplicable to plaintiff's re-employment claim as this doctrine does not apply to relitigation of the merits of a single cause of action in a

---

**3.** Although plaintiff also states his intention to litigate further his claim that he was denied employment before April 1980, he gives no indication of the basis for such a claim nor the distinction between this claim and the retaliatory re-employment claim. It may be that this other claim is subsumed by the re-employment claim.

second proceeding. Memorandum in Opposition at p. 14. The government further argues that even if the doctrine of collateral estoppel could be applied to the procedural posture of this case, the statutory scheme imposed by Congress for the resolution of such claims requires that the District Court determine the facts *de novo,* thereby precluding the use of collateral estoppel principles. *Id.* at pp. 14–15.

The difficulty seems to arise from the fact that the MSPB consolidated plaintiff's appeals vis-a-vis his re-employment claim and his removal/resignation claim pursuant to 5 U.S.C. § 7701(f)(2).[4] As a result, the MSPB and the EEOC each issued only one written decision encompassing both claims. Plaintiff may have believed that to contest the adverse portion of these decisions, *i.e.,* the denial of his constructive discharge claim, he was required to file suit in District Court reasserting both claims. As plaintiff, however, had already prevailed on his re-employment claim, he seems to believe that this summary judgment motion is necessary to preclude its actual relitigation.

Alternatively, plaintiff's motion may be interpreted as seeking only to preclude relitigation of the fact of retaliation in his re-employment while enabling plaintiff to relitigate the appropriate relief for this claim.

The government, on the other hand, seems to believe that the consolidation of the appeals by the MSPB transformed two separate claims into a single claim, forcing plaintiff to either accept partial defeat or to initiate and fully relitigate the merits of both claims. The government's opposition may also be read to assert that plaintiff may not limit the Court's review of the re-employment claim to the question of the appropriate relief alone.

In our view, plaintiff has alleged two distinct Title VII claims. The first claim asserts that plaintiff was denied his re-employment rights in retaliation for engaging in protected EEOC activity. As a result plaintiff was placed in a lower grade level job than that to which he believes he was entitled. The second claim alleges that plaintiff was constructively discharged from his GS–12 position because he was not being permitted to carry out his duties with the responsibilities ordinarily given to a GS–12 employee; that he was accompanied by a supervisor whenever he had a contact outside the office; that he was scheduled for no training; and that his testing schedule was severely limited. Amended Complt. at ¶ 30. Apparently, plaintiff alleges that these actions were also taken in retaliation for his protected EEOC activity.

If, in fact, plaintiff wishes only to relitigate his constructive discharge claim we see no reason to require him to relitigate his re-employment claim as well. The MSPB consolidated plaintiff's claims to promote the efficiency of the MSPB's processes. Requiring plaintiff to relitigate a claim on which he has already prevailed in order to relitigate his unsuccessful claim would transform the MSPB's efficiency measure into a waste of judicial resources at the District Court level.

More significantly, such a requirement would contravene the Congressional purpose in granting employees the right to a trial *de novo* in Federal Court.[5] The right to such *de novo* review is, *inter alia,* intended to grant employees access to a non-partisan judgment by a Federal Judge who is shielded from political influence by life tenure. *Chandler v. Roudebush,* 425 U.S. 840, 851, 96 S.Ct. 1949, 1955, 48 L.Ed.2d 416 (1976). Congress did not find it necessary to grant a reciprocal right to the government agencies, undoubtedly because any such bias at the administrative

---

**4.** 5 U.S.C. § 7701(f)(2) provides that the Board may join two or more appeals filed by the same appellant and hear and decide them concurrently if the deciding official hearing the cases is of the opinion that the consolidation could result in the appeals being processed more expeditiously and would not adversely affect any party.

**5.** 5 U.S.C. § 7703 (Judicial review of decision of the Merit Systems Protection Board) provides that in cases of discrimination under 42 U.S.C. § 2000e–16 the employee is entitled to have the facts subject to a trial *de novo* by the reviewing Court.

level would tip in the agency's favor. Requiring relitigation of successful claims to receive non-partisan review of unsuccessful claims would, in essence, give the government a right of appeal never intended by the statutory scheme.[6] Such a rule would inevitably chill employees' utilization of the Federal Courts for review of such claims by placing them in the "Catch–22" position of accepting partial defeat or risking the relief they have already received. We do not believe that 5 U.S.C. § 7703(c), granting federal employees the right to *de novo* review, may be used by the government as a sword to force relitigation of claims resolved against it.

■ We fail to see, however, the relevance of the doctrine of collateral estoppel to the present motion. This doctrine applies where there is a second action based upon a different cause of action than one previously litigated by the parties or their privies. The judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Here, the second action (the one before this Court) is based on the same cause of action (retaliation in re-employment) as was the first action before the MSPB. In reality, this suit is merely a continuation of one suit initiated before the MSPB, reviewed by the EEOC, sent back to the MSPB, and then instituted here for a trial *de novo*. Thus, the doctrine of collateral estoppel is of no effect.

■ If, alternatively, plaintiff filed the re-employment claim here due to his dissatisfaction with the remedy awarded by the MSPB and is seeking to preclude via a direct estoppel relitigation the fact of retaliation (leaving open only the question of the

appropriate relief), he may not do it. As far as we can tell from the papers submitted plaintiff has already received all the relief on that claim to which he is entitled by law. He was awarded a promotion and backpay to the date of his resignation. Compensatory and punitive damages are not recoverable under Title VII. B. Schlei and P. Grossman, *Employment Discrimination Law* 1452 (2d ed. 1983). In order to be presently reinstated to a GS–13 position with the FAA, plaintiff must prevail on his constructive discharge claim. Thus, as far as we can see, relitigation of the re-employment claim would not offer the possibility of any additional relief. Therefore, it appears that the re-employment claim is now moot.[7]

Finally, we note plaintiff's statement that "the Board's findings of fact that are articulated in its November 22, 1982 Opinion are conclusive (where applicable) in plaintiff's other claims." Memorandum in Support at p. 6 n. 3. As plaintiff's motion does not seek partial summary judgment in his constructive discharge claim as to any such findings, it would be premature to render a decision on this. Nonetheless, we note that proof that the FAA retaliated against plaintiff in re-employing him as a GS–12 employee would not in and of itself prove that plaintiff's resignation from the GS–12 position constituted a constructive discharge. *See, e.g., Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir.1985); *Grant v. Morgan Guaranty Trust Co. of New York*, 638 F.Supp. 1528 (S.D.N.Y.1986). Therefore, it seems doubtful that collateral estoppel (issue preclusion) would necessarily have any conclusive effect on the resolution of the constructive discharge claim even if the other requisites of administrative collateral estoppel were satisfied.

Plaintiff's claim of retaliation in violation of Title VII by virtue of his re-employment

---

6. Such a requirement would also seem to preclude consolidation of such claims by the MSPB because the possibility that a party would be adversely affected would almost inevitably be raised.

7. If, in fact, plaintiff could benefit further by relitigation of this claim we do not believe that

plaintiff may unilaterally limit the scope of the District Court's review. In such a posture, we would agree with the government that a trial *de novo* would be required on the entire claim, with the findings of the administrative body being admissible as evidence at trial. *Chandler*, 425 U.S. at 864 n. 39, 96 S.Ct. at 1961 n. 39.

at a GS–12 grade level is, accordingly, dismissed as moot.

*Privacy Act Claim*

■ Plaintiff seeks summary judgment on his claim that his rights under the Privacy Act were violated by the dissemination of letters by his former supervisor, one Brian Vincent ("Vincent"), which stated that plaintiff's unauthorized review of airman files appeared to constitute a violation of the Privacy Act by plaintiff. Plaintiff seeks a minimum of $6,000 in damages and an order that any reference to the conclusion that plaintiff violated the Privacy Act be expunged from his record.

The government now concedes an inadvertent violation of section 552a(b) of the Act, but contends that the United States is immune from liability absent a showing that the violation was intentional or willful. The government further contests that any violation of subsection (e)(6) of the Act occurred or that such a violation was intentional or willful.

*Failure to Maintain Adequate Records*

Section 552a(e)(6) of the Act requires that "prior to disseminating any record about an individual to any person other than an agency ... [the agency shall] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." Plaintiff asserts that because the letters above "erroneously implied" that plaintiff had violated the Privacy Act, the government is *per se* liable for the violation.

We disagree. In order to prevail on this claim, plaintiff must show not only that the information disclosed was inaccurate but also that the government did not make reasonable efforts to insure such accuracy. The accuracy of the information and the reasonableness of the efforts of the government to insure such accuracy are both material questions of disputed fact precluding the entry of summary judgment. *See* Fed.R.Civ.P. 56(c).

*Unauthorized Disclosure of Information*

Section 552a(b) of the Privacy Act prohibits disclosure of any record contained in a system of records by any means of communication to any person or to another agency except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, with certain exceptions. The government now concedes that an inadvertent violation of this subsection occurred. The government, nonetheless, disclaims all liability for the violation primarily because the violation has not been shown to be willful or intentional.

Section 552a(g)(4) provides that in any suit brought under the subsections herein applicable in which the Court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual for actual damages sustained as a result of the violation, but in no case less than $1,000, and for costs and reasonable attorneys' fees. Thus to prevail on his claim for damages, plaintiff must show that Vincent's violation of the Act was intentional or willful.

In his affidavit Vincent states that:

> After consultation with the Regional Counsel and the Regional Personnel Office, it was decided that letters should be sent to the inspectors whose files Bartel had obtained. This was because the Privacy Act required an accounting be made of entry into those files and that the accounting be available to the subject of the files. Therefore it seemed appropriate to send them letters and to include enough information in the letters to let them know what documents had been made available and also to explain to some extent why an accounting had not been made previously. Because the inspectors worked for the Flight Standards Division, it was decided that I should sign the letters, and I did.

In light of the above, we do not believe that we may find as a matter of law that Vincent acted intentionally and willfully, that is with greater than gross negligence without grounds for believing his actions to be lawful, or by flagrantly disregarding others' rights under the Act. *See Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir.1984). Vincent's state of mind clearly presents a question of disputed material

fact precluding the entry of summary judgment. *See, e.g., Zeller v. United States,* 467 F.Supp. 487, 503 (E.D.N.Y.1979).[8]

Accordingly, plaintiff's motion for summary judgment on his Privacy Act claims is denied.

SO ORDERED.

8. The government also argues that summary judgment is improper because plaintiff must prove that he suffered an adverse effect from the violation of the Act before liability may be imposed. As we have already held that summary judgment is precluded on other grounds, we need not and do not reach this issue.