Gideon H. MORROW

v.

Philip CROSBY, Rear Admiral, S.C., U.S.N., Commanding Officer, et al.

Civ. A. No. 74–1761.

United States District Court, E. D. Pennsylvania.

July 1, 1976.

Joseph B. Meranze, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., E.D.Pa., Kenneth A. Ritchie, Asst. U. S. Atty., E.D. Pa., Philadelphia, Pa., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McGLYNN, District Judge.

### INTRODUCTION

Having exhausted the Administrative procedure, the plaintiff, a black male employee of the Federal Government, charging employment discrimination, brought this action alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–16(c) and 2000e–5(e); the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Civil Rights Act of 1871, 42 U.S.C. § 1983, seeking injunctive and declaratory relief as well as damages. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343.

The defendants' motion for summary judgment on the basis of the administrative record was denied on the authority of *Sperling v. United States,* 515 F.2d 465 (3d Cir. 1975) which held that a person charging discrimination in Federal employment was entitled to a trial *de novo* in the District Court.[1]

At trial, both sides stated that they would rest on the record made at the Administra-

---

1. This principle was recently affirmed by the Supreme Court in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

tive proceedings [2] and would offer no further evidence.

Upon review of the record and upon consideration of the briefs and arguments of the parties, the Court makes the following:

## FINDINGS OF FACT

### The Parties

1. The plaintiff is Gideon H. Morrow, a black male citizen of the United States, whose place of residence is 2403 N. Broad Street, Philadelphia, Pennsylvania.

2. The defendant, Philip Crosby, is the Commanding Officer of the Navy Aviation Supply Office (ASO), located at 700 Robbins Avenue, Philadelphia, Pennsylvania.

3. The defendant, R. G. Heurich, is the Commanding Officer of the Naval Publications and Forms Center (NPFC), located at 5801 Tabor Avenue, Philadelphia, Pennsylvania.

4. The defendant, Frank Robey, Jr., is the Chairman of the Employee Appeals Review Board, Department of the Navy.

5. The defendant, William P. Berzak, is the Chairman of the Board of Appeals and Review of the United States Civil Service Commission, Washington, D. C.

6. The defendant, The United States Civil Service Commission, Washington, D. C., is charged with the duty to hear and determine complaints of racial and sex discrimination against civilian employees of the United States Navy.

7. The plaintiff has been in Federal Service for twenty-five years and, at the time of this complaint, was employed as a Supply Technician, GS-7, Data Control Division, Data Analysis Branch, ASO.

### Factual Background Re: The Promotional Advancement Opportunity

8. On February 12, 1973, Rear Admiral W. R. Dowd, Jr. forwarded two letters, almost identical in content, one to defendant Crosby and the other to defendant Heurich authorizing the creation of a billet for assistant to the EEO Coordinator for the ASO and NPFC activities.

9. As a result, defendant Heurich caused to be created a job description for the position of Personnel Management Specialist for NPFC.

10. As a result of Admiral Dowd's letter, defendant Crosby caused to be created a job description for the position of Personnel Management Specialist for ASO.

11. Thereafter, two positions were advertised for competition in Merit Promotion Announcement ASO/NPFC 73-3/T, dated February 23, 1973.

The announcement contained the following language:

PERSONNEL MANAGEMENT SPECIALIST, GS-201-5 or GS-201-7 IN TRAINING FOR PERSONNEL MANAGEMENT SPECIALIST, GS-201-11 (2 positions). (Assistant to the EEO Coordinator and Federal Women's Program Assistant).

12. One position was to be filled from the promotion register established in the ASO and the other position was to be filled from the promotion register established in the NPFC. (Actually, the two promotion

---

2. When proposed informal disposition of plaintiff's complaint by the Commanding Officers of the Aviation Supply Office (ASO) and the Naval Publications and Forms Center (NPFC) failed to resolve the matter, Equal Employment Opportunity (EEO) investigations were initiated June 28 and completed July 16, 1973 with respect to ASO and July 11 and completed August 13, 1973 with respect to NPFC. Upon the recommendation of the EEO Counselor, plaintiff filed a formal complaint and hearings were held on October 16 and 23, 1973 resulting in a decision of no discrimination by the EEO Complaint Examiner. (A.R. 40–50).

Plaintiff appealed this decision to the Chairman, Employee Appeals Review Board, Dept. of Navy. On January 11, 1974, Frank A. Robey, Jr. reported his adoption of the Examiner's conclusion that there was no credible evidence in support of the allegation that race or sex played a part in plaintiff's nonselection. (A.R. 572–573).

On January 25, 1974, plaintiff appealed to the Board of Appeals and Review, U.S. Civil Service Commission which, on June 7, 1974, affirmed the January 11 decision. (A.R. 7).

registers were treated as one by the Selection Advisory Panels).

13. Each activity established a Selection Advisory Panel to consider and recommend a candidate, from among those referred on the promotion certificates, to the respective selecting officials.

14. Plaintiff applied for the positions.

15. Plaintiff was rated highly qualified and ranked second on the ASO promotion certificate.

16. A final screening produced thirteen best qualified candidates including plaintiff, Dorothy Brooks and Joan Harad.

Plaintiff was the only male in this group of best qualified candidates.

17. The ASO panel unanimously recommended Dorothy Brooks (white, female) for selection and their recommendation was approved by the ASO Commanding Officer, defendant, Crosby, on April 19, 1973.

18. Mrs. Brooks filled the position at the GS–5 level, effective May 14, 1973.

19. The NPFC panel unanimously recommended Joan Harad (white, female) for selection and their recommendation was approved by the NPFC Commanding Officer, defendant Heurich.

20. Miss Harad filled the position at the GS–7 level, effective May 13, 1973.

A. *The Significance Of The Wording Of The Joint Merit Promotion Announcement And Related Literature*

21. The promotion announcement, ASO/NPFC 73–3/T, defines the position Personnel Management Specialist as: "Assistant to the EEO Coordinator and Federal Women's Program Assistant" while the job description states, in part: "Gives special emphasis to all aspects of the Federal Women's Program."

22. Joint Instruction 12713.1E, dated July 1, 1970, covering the subject matter *Equal Opportunity,* describes the responsibilities of the Federal Women's Program (FWP) Coordinator. (A subsequent change reduced the title to FWP Assistant although the duties remained the same).

23. Paragraph 4, subdivision i, page 3, of Instruction 12713.1E incorporates the pronouns "she" and "her" in describing the duties of the FWP Coordinator.

24. This language did not preclude plaintiff from applying for or being considered for the positions noticed in ASO/NPFC 73–3/T.

25. Joint Instruction 12713.1E also outlines the duties of the EEO Counselor position and the EEO Coordinator position using the masculine gender.

26. Mrs. Lillian Gibson was the EEO Coordinator for ASO.

27. The use of the masculine gender in the description of EEO Coordinator did not preclude Mrs. Gibson from becoming the coordinator of ASO.

28. In addition, ASO had eight Counselors, half of whom were females and NPFC had five Counselors, three of whom were females.

29. The use of the masculine gender in the description of EEO Counselor did not preclude these females from becoming Counselors in the ASO/NPFC activities.

30. Little or no relationship exists between the gender of the pronoun and the sex of the occupant of the position described.

31. The wording of the Joint Merit Promotion Announcement and related literature does not create a presumption that discrimination was a factor in the nonselection of plaintiff for the positions in question.

32. The wording of the Joint Merit Promotion Announcement and related literature was not a factor in plaintiff's nonselection, *i. e.* the highlighting of one of the collateral duties of the Assistant to the EEO Coordinator, that is with regard to the Federal Women's Program, was not a factor in plaintiff's nonselection.

B. *The Composition Of The Selection Advisory Panels*

33. The panel members were appointed by the Commanding Officer of the respec-

tive activities, ASO and NPFC, in accordance with the regulations of the Merit Promotion Program, Joint Instruction 12340.-2E, dated February 8, 1973.

The appointments were also in accordance with the Memorandum of J.J. Gapp, C.O., NPFC, dated September 27, 1968 and the Memorandum of H.J.P. Foley, Jr., C.O., ASO, dated April 10, 1968 with respect to minority representation on selection panels.

34. Each panel was staffed by the respective activities' Executive Officer, the immediate supervisor of the job, the former FWP Coordinator and the Deputy Director of the Consolidated Civilian Personnel Department.

35. The ASO panel, therefore, was composed of two white males, a white female and a black female.

36. The NPFC panel was composed of two white males, a black male and a white female.

37. Neither the selection process nor the resultant composition of the panels creates a presumption of bias.

38. The composition of the panels was not a factor in the nonselection of the plaintiff for the positions in question.

C. *Personal Animus Of The Chairman Of ASO Selection Advisory Panel As A Factor In The Nonselection Of Plaintiff*

39. A finding that ASO Selection Panel Chairman Allshouse harbored any animus toward plaintiff is unwarranted.

40. The plaintiff was not discriminated against by Allshouse in his capacity as ASO panel chairman.

41. Plaintiff's promotional opportunities were not adversely affected by the presence of Allshouse on the ASO Selection Advisory Panel.

D. *Promotional Advancement Selections— Racial Considerations To Promote Racial Balance*

42. Both Panels followed a prescribed procedure with regard to reviewing and interviewing each and every applicant.

43. The selection of Dorothy Brooks and Joan Harad is attributed to their scores on the Federal Service Entrance Examination, their employment experience, their educational background, employment awards and their performance before the Panels in response to questions asked of every applicant interviewed.

44. These factors considered by the Panels were in accord with the guidelines of the Merit Promotion Announcement, ASO/NPFC 73–3/T.

45. These factors considered by the Panels were fair and reasonable.

46. Plaintiff's race was not a factor in his nonselection.

47. Plaintiff was not subject to discrimination on the basis of his race.

## CONCLUSIONS OF LAW

1. This Court has both personal and subject matter jurisdiction pursuant to § 717(c) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(c), amending Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. The defendants did not discriminate against plaintiff in his federal employment on the basis of his race or sex.

3. The defendants did not violate the Civil Rights Act of 1866, 42 U.S.C. § 1981.

4. The defendants did not violate the Civil Rights Act of 1871, 42 U.S.C. § 1983.

5. The defendants are entitled to judgment in their favor and against plaintiff.

## DISCUSSION

It appears that plaintiff's general charge of discrimination is grounded to a great extent upon his belief that he was overwhelmingly more qualified than either of the two applicants, Dorothy Brooks (ASO) and Joan Harad (NPFC), who were ultimately selected to fill the position of Personnel Management Specialist for the respective activities.

While plaintiff insists that his credentials warranted his selection, nevertheless, I am

satisfied that the procedure followed throughout the selection process was fair and reasonably calculated to afford a conscientious consideration of each and every applicant certified as eligible for promotion and was completely untainted by considerations of race or sex.

The Merit Promotion Announcement, ASO/NPFC 73–3/T, called for the establishment of temporary promotion registers to fill the two vacancies of Personnel Management Specialist. Applicants at the GS–5 or GS–7 level were to be considered for the position which would, after training, raise the selectees to GS–11. Persons who submitted the appropriate questionnaire and application forms were then reviewed on the basis of the information on the forms and, if qualified, were placed on the temporary registers certified at either GS–5 or GS–7 according to their experience. The Announcement also set forth, as a guide, the experience required for eligibility.

Dorothy Brooks was certified as eligible and placed on the register at GS–5. Both Joan Harad and plaintiff were certified at GS–7. All three were rated highly qualified on the register.[3]

Mrs. Brooks was the unanimous recommendation of the ASO Advisory Panel while Miss Harad was unanimously selected for recommendation by the NPFC panel. Both decisions were attributed to considerations of the applicants' scores on the Federal Service Entrance Examination, their employment experience, their educational background, employment awards and personal appraisals by the panel members of the applicants' inherent abilities and capabilities as displayed at the interviews. A comparison of the respective credentials of Mrs. Brooks, Miss Harad and plaintiff fails to disclose any disparity in qualifications which would give rise to a presumption of bias or favored treatment.

Each applicant on the promotion register, save one, was interviewed by both panels. At the beginning of each interview, in the presence of the applicant, a summary of his or her background was read. Then the applicant was asked if anything was overlooked and each was given an opportunity to advise the members of anything in his or her profile which he or she wished to bring to their attention. The interviews were concluded in one day and decisions reached by a process of independent analysis of each applicant by the respective panels; each panel member deliberating independently and arriving at a conclusion presenting a first, second and third choice. The choices were tallied and the recommendations forwarded to the Commanding Officers for approval.[4] There is nothing in this process which precludes consideration of minorities or males. Nor can I perceive any suggestion of a specific design to deprive the plaintiff of this job opportunity.

One additional aspect of plaintiff's general claim requires comment and this relates to the fact that Mrs. Brooks was selected even though she was certified at GS–5 while plaintiff was certified at GS–7. Plaintiff insists that this evinces the existence of bias and supports his charge of discrimination.

This argument is not persuasive. The positions were set up at the trainee level, GS–5 or GS–7 and, therefore, a person certified at either level would be equally capable. I credit the statement of Lillian Gibson, the EEO Coordinator for the ASO activity, that "[w]hen a person is found qualified and accepted, and placed on the certificate [promotion register] the difference in grade is not a factor in consideration." (A.R. 40).

The various factors considered and relied upon by the panels in reaching their deci-

---

3. Joint Instruction 12340.2E, dated February 8, 1973 defines the term "highly qualified candidate" as:

  Eligible candidates whose experience, training and potential substantially exceed the qualification standard for the position, including appropriate selective placement fac-

tors, to a degree that indicates they are likely to be able to perform in the job filled in a superior manner.
(A.R. 83).

4. Defendant Heurich for the NPFC activity and defendant Crosby for the ASO activity.

sions accorded with the guidelines relating to the experience required of selectees contained in the Promotion Announcement, ASO–NPFC 73–3/T.

■ Plaintiff's contention that his community work, union activities, efficiency awards and other distinctions demonstrate superior qualifications and, therefore, his nonselection must be attributed to race or sex discrimination is not supported by the record. I have compared these aspects of plaintiff's background against that of the two selectees (See appendix attached hereto), and while quantitatively the plaintiff may have an edge, it is apparent that qualitatively Miss Harad and Mrs. Brooks have more distinguished records of achievement. Accordingly, I am satisfied that a charge of discrimination cannot be substantiated simply on the basis of a comparison of the overall qualifications of the respective candidates.

I now turn to plaintiff's specific charges of discrimination.

The first of these charges zeroes in on the wording of the Promotion Announcement, ASO/NPFC 73–3/T, and on the prior Navy directive, Joint Instruction 12713.1E. The basis for this allegation is that the position of Personnel Management Specialist was designed to encompass many duties only one of which is to serve in a capacity similar to the prior Federal Women's Program Assistant position. Plaintiff contends that the announcement was intentionally drafted in a manner which over-emphasized this latter duty and, when read in conjunction with previous instructions referring to the FWP Coordinator in feminine terms, predisposed the panels to consider the applicants on the basis of their sex.

After an examination of the evidence, I am satisfied that the language of the challenged documents did not adversely affect plaintiff's promotional opportunities.

Prior to 1973, the FWP was supervised by Helen Hannon who held the title Federal Women's Program Coordinator. She devoted 15 to 20% of her time to the FWP which is a part of the overall EEO Program.

On July 1, 1970, Joint Instruction 12713.-1E was issued covering the subject matter *Equal Opportunity.* The instruction contained a description of the responsibilities of the FWP Coordinator which represents part of the literature subject to attack presently.[5] Subsequently, the title of Coordinator was reduced to Assistant although the duties of Mrs. Hannon remained the same.

Admiral Dowd's letter authorized a billet for an Assistant to the EEO Coordinator with special emphasis on the Federal Women's Program.[6] This directive prompted the drafting of a "Position or Job Description".[7]

---

5. Joint Instruction 12713.1E, 1 July 1970, contained the following pertinent language:

   i. *Federal Women's Program Coordinator.* The FWP Coordinator is a special advisor to the Commanding Officer on the Navy's Action Program for Women.

   (1) She is responsible for advancing the program and for devising imaginative approaches.

   (2) Presenting the Department of the Navy's Program to various groups is another of her responsibilities. She is expected to make contacts with various women's organizations, professional groups, high schools and universities, employment agencies, local news media, and other private or public groups and individuals concerning employment opportunities for women.

   (3) She will also serve as an ex-officio member of the activity EEO Committee. However, her primary emphasis will be on external contacts in furthering the activities EEO Program.
   (A.R. 302).

6. Admiral Dowd's letters to Admiral Crosby, C.O. ASO, and Captain Heurich, C.O. NPFC, dated February 12, 1973, provide in relevant part:

   Establish and fill a staff assistant position to the EEO Coordinator who will be responsible for the Federal Women's Program. Please do not misunderstand me. This position is to be an assistant to the EEO Coordinator and the Federal Women's effort is to be considered a part of the overall program.
   (A.R. 321–319).

7. *See Position or Job Description,* ASO: # 43171 (A.R. 119–116); NPFC: # 43173 (U.S.Civ.S.Comm.Rev.R. 190–187). The relevant language for our purposes is contained in the *Introduction* of each document, which provides:

   Serves as the full assistant to the Equal Employment Opportunity Coordinator for

However, in translating the directive into the Promotion Announcement, the reference in the Dowd letter to the FWP resulted ultimately in additional language describing the Personnel Management Specialist position: "Assistant to the EEO Coordinator *and Federal Women's Program Assistant.*" (Emphasis added).

Plaintiff makes much of the fact that this additional language was a factor in his nonselection. To argue that the added language represents an intentional act to discourage any particular applicant flies in the face of the testimony of the author of the Promotion Announcement, Patricia Brooksbank, both in her affidavit and before the EEO Complaint Examiner. It is clear that the additional title, FWP Assistant, evolved from the understanding, or perhaps misunderstanding, of Mrs. Brooksbank as to the scope of the position which in turn is attributable to her misreading of the job description documents. I am not convinced, however, that this was intentional nor do I believe that plaintiff's nonselection in any way resulted from this confusion inasmuch as it did nothing to deter plaintiff from applying for the position of Personnel Management Specialist along with eleven other males.

Plaintiff also raises an issue with regard to the feminine references within Joint Instruction 12713.1E. (*See* n.5, *supra*). Joint Instruction 12713.1E, however, also outlined the duties of the EEO Counselor and the EEO Coordinator using the masculine gender. Nevertheless, a woman, Lillian Gibson, was selected and serves as the Coordinator for ASO.

Additionally, during this time, ASO had eight EEO Counselors, half of whom were females; likewise, the NPFC activity had five: three of whom were females despite the masculine references within the job description. (A.R. 270–269).

Consequently, I find that the use of the masculine or feminine gender in job descriptions does not result in discrimination against members of the opposite sex who apply for that position.

Plaintiff's second specific attack relates to the composition of the Selection Advisory Panels. The argument, in substance, is that individuals were selected to serve as panel members "who, more likely than not, would choose a woman rather than a man for the two jobs in question." There is absolutely nothing in the record to support such a contention.

The panels were assembled in accordance with Joint Instruction 12340.2E, dated February 8, 1973 and were assured of minority representation by Command directives.[8] Each panel had the respective units' Executive Officer, the immediate supervisor of the job, the units' former Federal Women's Program Coordinator (Assistant), and one individual from the Consolidated Civilian Personnel Department as members. For the ASO panel, this meant a composition of two white males, a white female and a black male. For the NPFC panel, this meant two white males, a black male and a white female.

I can perceive nothing in the make-up of these panels which even remotely suggests that they would discriminate against a male applicant.

The plaintiff also points to an event which occurred almost two years prior to his being considered for the position at issue when the present Chairman of the ASO Advisory Panel, then acting as Executive Officer of the ASO, reprimanded plaintiff for action plaintiff took as a Union Representative. Plaintiff contends that this reprimand coupled with a statement by a co-worker that "Captain Allshouse never for-

---

ASO. *Gives special emphasis to all aspects of the Federal Women's Program.*
(A.R. 118, emphasis added).

    Serves as the full assistant to the Equal Employment Opportunity Coordinator for NPFC and the other smaller Navy Commands on the Compound. *Gives special em-*

*phasis to all aspects of the Federal Women's Program.*
(U.S.Civ.S.Comm.Rev.R. 189, emphasis added).

**8.** *See* Memo of J.J. Gapp, C.O. NPFC, dated Sept. 27, 1968, (A.R. 268); and, Memo of H.J.P. Foley, Jr., C.O., ASO, dated April 10, 1968, (A.R. 267).

gets anything",[9] establishes that the Chairman of the Panel was biased against him because of his race and that the Chairman influenced the decision of the other members of the panel.

I reject this contention for the credible evidence is to the contrary. I am satisfied that the reprimand of plaintiff was completely unrelated to his race or sex.

Similarly, plaintiff's final argument that the Advisory Selection Panels considered the race of each applicant in order to give racial balance to the EEO Staffs is without merit and totally unsupported by the evidence.

In the last analysis, Dorothy Brooks and Joan Harad were eminently more qualified for the position than the plaintiff and they received the appointments for that reason and that reason alone.

Accordingly, plaintiff's charges of employment discrimination have not been sustained and judgment must be entered in favor of the defendants and against the plaintiff.

To the extent that this discussion states findings of fact not expressly set forth in the formal Findings of Fact, the same are adopted as if expressly stated under that heading.

## APPENDIX I

## COMPARATIVE QUALIFICATIONS OF DOROTHY BROOKS, JOAN HARAD AND GIDEON MORROW

### DOROTHY BROOKS

unanimous recommendation of the ASO Selection Advisory Panel.

"exhibited exceptional speaking and communication ability throughout the interview in a calm, logical and confident manner." (Recommendation of ASO Panel to ASO Commanding Officer, A.R. 61).

test score of 82 on the Federal Service Entrance Examination, (A.R. 63).

previously employed as an Inventory Management Specialist, GS–7, under the NAVSUP Intern Program.

awarded Quality step increases in 1964, 1966, 1969 and 1970.

attends Drexel University, Evening Div., where she has completed 18 semester/hours/credit in Mathematics, Statistics and English.

8 years/10 months specialized experience equivalent per standards of Promotion Announcement ASO/NPFC, 73–3/T, Feb. 23, 1973, (A.R. 63).

### JOAN HARAD

unanimous recommendation of the NPFC Selection Advisory Panel.

"displayed confidence and composure throughout the interview and an exceptional ability to communicate." (Recommendation of NPFC Panel to NPFC Commanding Officer, U.S.Civ.S.Rev.R. 89).

test score of 70 on the Federal Service Entrance Examination, (A.R. 66).

previously employed as an Inventory Management Specialist, GS–9.

Temple University graduate, B.S. in Education, 1968.

attended Temple University in 1971–72 participating in the Civil Service Commission Scholarship Program where she completed 12 semester/hours/credit towards a Masters Degree in Public Administration.

completed a course in Data Processing at Drexel University in 1970.

awarded a certificate for a Cost Reduction Suggestion submitted in May, 1972, which resulted in a savings of $2,000.00.

was a YMCA group leader while an undergraduate aiding underprivileged teenage girls.

appointed EEO Counselor, December, 1972.

1 year specialized experience equivalent per standards of Promotion Announcement

---

9. The co-worker denied making the statement and denied ever suggesting that Captain Allshouse harbored a grudge against the plaintiff.

ASO/NPFC, 73–3/T, Feb. 23, 1973, (A.R. 66).

GIDEON MORROW

test score of 41 on the Federal Service Entrance Examination.

currently employed as Supply Technician, GS–7, Data Control Div., Data Analysis Branch, ASO.

2 years/10 months specialized experience equivalent per standards of Promotion Announcement ASO/NPFC, 73–3/T, Feb. 23, 1973, (A.R. 66).

ASO Union Representative, Local 1698, American Federation of Government Employees.

received efficiency award, $25.00, 1959.

attended a Labor Management Institute at St. Joseph's College.

four years experience with minority group problems in the inner city as Chairman of a Model Cities District.

Certificate of Training, Elementary Electronics (First Semester, Dept. of Navy, After Hours Employee Training Program, Dec. 13, 1961, (A.R. 297).

Certificate of Training, Intro. to Automatic Data Processing (40 hrs.), Dept. of Navy, After Hours Employee Training Program, March 3, 1964, (A.R. 296).

Certificate from Temple University, Center for Community Studies Institute, October 31, 1966, (A.R. 291).

Certificate of Training, Shop Steward and Union Administration Training, American Federation of Government Employees, Oct. 2–4, 1969, (A.R. 292).

Certificate of Training Seminar on Improving Communications With The Public, U.S. Civ.S.Comm., Jan. 25–26, 1973, (A.R. 293).

Honorary Membership, Chapel of Four Chaplains, May, 1970, (A.R. 289).

Certificate of Appreciation, Interested Negroes Inc., May, 1971, (A.R. 288).

Citation by Pennsylvania House of Representatives for Performance in Model Cities Program, Chairman for Neighbor Council ¶ 8, Nov. 22, 1972.

Letter of Appreciation from Rear Admiral Stuart H. Smith regarding ASO labor relations program, July 27, 1972, (A.R. 287).

Certificate of Training, Effective English Workshop, U.S.Civ.S.Comm., Jan. 3–5, 1973, (A.R. 294).

