**Katie KING, Plaintiff,**

v.

**Benjamin F. BAILAR, Individually and in his Capacity as Postmaster, United States Postal Service, United States Postal Service, John R. Strachan, Clifford V. Rowland, Michael Laraia, Robert Draven, Albert J. Washington, John W. Mackay and S. Wesley Henderson, all Individually and in their Capacities as Officers, Supervisor and Employees, United States Postal Service, Defendants.**

**No. 76 Civil 172.**

United States District Court,
S. D. New York.

Jan. 13, 1978.

Gilbert A. Holmes, New York City, for plaintiff.

Robert B. Fiske, Jr., U.S. Atty., for the Southern District of New York, New York City, for defendants; Kent T. Stauffer and Sherry J. Leiwant, Asst. U.S. Attys., Lawrence A. Dinerstein, Senior Asst. Reg. Labor Counsel, U.S. Postal Service, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

Katie King, a black female who has been in the employ of the United States Postal Service since November 1959, brings this action against the Postmaster General and other defendants,[1] charging discriminatory conduct against her based on her race and sex.[2] Essentially, she alleges two sepa-

---

1. The Court herewith dismisses the action against all defendants except the Postmaster General. *See* 42 U.S.C. § 2000e-16(c), which provides:

    an employee . . . may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

2. Discrimination on the basis of sex and race in federal employment is prohibited by § 717(a) of the Civil Rights Act of 1964, as added by § 11

rate acts of discrimination: (1) the reversion or elimination of her position as Administrative Assistant in December 1972, when she was on service with the Equal Employment Opportunity ("EEO") Coordinator in the Northeast Regional Office of the Postal Service, and her reassignment to the New York Post Office at a lower grade and salary; and (2) the appointment in March 1973 of a white female as a junior stenographer in the EEO office three months after plaintiff's termination. After plaintiff pursued her administrative remedies in the Postal Service and on appeal to the Civil Service Commission, she commenced this action.[3]

The Postal Service functions in separate units. The country is divided into regional offices ("Regional Office"); the New York area is included in the Northeast Region. Regional Offices generally are concerned with recruitment, safety, pension, employee-employer relations and other personnel and policy matters. The day-by-day activities of the Postal Service, such as the delivery of mail and operations in connection therewith, are performed by local Post Offices ("Post Office") under the direction of Postmasters. Each region has a Regional Postmaster who oversees the activities of the Post Office and the local Postmasters. An employee hired and paid by a Post Office may under certain circumstances be "detailed" to a Regional Office. A "detail" is a temporary assignment of an employee from one branch of the Service to another, but the detailee continues to be paid by the Office which originally hired the employee.

From her initial employment in 1959 to September 2, 1969, plaintiff was a clerk-stenographer, Level-5, at the New York Post Office. On the latter date she was assigned to the EEO Office in the Regional Office where she continued to serve until December 1972. While so assigned to the EEO

Office in June 1971, she received a promotion to Administrative Assistant, Level-7. At all times the New York Post Office continued to pay her salary. The Regional Office was never authorized to appoint to its staff and to have on its authorized complement of employees an Administrative Assistant.

■ We now consider her first charge that her position as Administrative Assistant was reverted or eliminated because of discrimination against her on account of her race and sex. The Post Office service, soon after its reorganization in July 1971, put into effect substantial cutbacks and reduction of staff in the Regional and Post Offices in efforts to economize and improve efficiency. By 1972, personnel had decreased from 450 to 249 in the Northeast Regional Office and from approximately 45,000 to 35,000 in the New York Post Office. As part of this wholesale reorganization the Postmaster General ordered that all details be terminated in April 1972. The execution of the entire cutback program extended over a substantial period of time, and it was found necessary to grant extensions of some proposed terminations of details. Plaintiff's termination was forestalled until December 15, 1972 upon the application of her superiors. On that day she was ordered returned to the New York Post Office effective December 16, 1972. Two days later her position as Administrative Assistant, Level-7, was "reverted" by the New York Post Office as being unnecessary; thereupon she became a clerk-stenographer, New York Post Office, Office of Personnel. This shift resulted in a reduction in salary from $11,463 to $11,073 per annum.

Plaintiff was not the only one affected by the retrenchment policy. More than fifty detailees were returned from the Regional

---

of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16(a). This section provides the exclusive judicial remedy for discrimination in federal employment. *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Thus plaintiff's claim under 42 U.S.C. § 1981 must be dismissed.

**3.** The findings of fact and legal conclusions made in the administrative proceedings are not binding on this Court, which conducted the trial of this action *de novo. See Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

Office to their original assignment offices; the group included males and females, whites, blacks and Hispanics. There was no evidence that the action taken was not applied equally to all under the cutback program. Indeed, it appears that following the Postmaster General's order to terminate all details plaintiff was kept at the Regional Office longer than most other detailees in their respective assignments.

Plaintiff contends that she was discriminatorily returned to the New York Post Office and that the April 1972 order directing that details be terminated was inapplicable to her because she was not a detail. The record does not support her contention. Throughout the entire period of her assignment to the Regional Office, plaintiff's salary was paid by the New York Post Office. The position of Administrative Assistant was within the New York Post Office authorized complement. As previously noted, it was never authorized for the Regional Office. It is clear that she was not a permanent employee of the Regional Office but at all times of the New York Post Office. The termination of her assignment to the Regional Office and the subsequent reversion of the position of Administrative Assistant by the New York Post Office was pursuant to the major reorganization and cutback that the service was undergoing throughout the 1971–72 period.

There is further affirmative evidence that negates any finding of discrimination in the termination of plaintiff's employment. Mr. Laraia, the Director of Employee Relations in the Regional Office, testified that she was considered a well-qualified and good worker. Thus she was offered several jobs before and after the reorganization in 1971 in the office of the Assistant Regional Postmaster General and elsewhere in the Regional Office. Therefore plaintiff's claim that her superiors in the Regional Office sought to be rid of her is without substance.

Plaintiff concedes she was told by her superiors about such available positions, but contends that she was not actually offered appointments. But even were the Court to accept her rather fine distinction of these incidents, the fact is that the openings were made known to her and had she applied appointments would have followed. There was no discrimination against plaintiff on account of her race or sex either in the elimination of the Administrative Assistant position or by her transfer to the New York Post Office.

We next consider plaintiff's claim of discrimination which centers about the appointment of Eva Gross, a white person. On March 20, 1973, Ms. Gross was appointed junior stenographer, Level-7, to the Manpower Development Branch of the Regional Office, where she initially was assigned to the EEO Coordinator to perform stenographic duties which plaintiff had carried on while on assignment to that office. Ms. Gross' annual salary upon her appointment was $8,745, almost $2,500 less than plaintiff's then salary. Plaintiff was not offered this position.

Despite the substantial difference in salary, plaintiff contended that Eva Gross' appointment three months after plaintiff had been ordered returned to the New York Post Office was because of racial discrimination, and commenced administrative proceedings within the United States Postal Service.[4] During the course of those pro-

---

4. In a supplemental brief submitted upon the conclusion of this trial, the defendants, with respect to the Gross claim, took the position that since the Postal Service and the United States Civil Service Commission had found that Eva Gross' appointment resulted in race discrimination, "plaintiff has met her burden of proof on this issue by placing into evidence the findings of the Civil Service Commission." The defendants further assert that plaintiff having made a prima facie case defendants had, and have sustained, a burden "to articulate some legitimate, nondiscriminatory reason" for the actions taken, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and that consequently plaintiff to prevail must establish that defendants' stated reasons for the actions taken were in fact pretext. It is difficult to understand defendants' concession with respect to the findings in the administrative proceedings, since neither the administrative rec-

ceedings and in an attempt to adjust the matter, plaintiff was offered on May 24, 1974 a position in the EEO Office as a junior stenographer, Level-7, for a total salary of $12,314 per annum, which offer plaintiff rejected. In November 1974, she was again offered the position of junior stenographer, Level-7, at an annual rate of $13,732, retroactive to March 20, 1973 (the date of Eva Gross' appointment), in the EEO Office.

Plaintiff claims that the hiring of Ms. Gross constituted racial discrimination because she was hired to perform substantially the same duties that plaintiff had performed. She views her termination and the hiring of Ms. Gross three months later to be part and parcel of the same plan to staff the EEO Office with white stenographic personnel.

The Court is not willing to so link the two actions. Ms. King's termination and return to the New York Post Office was part of a massive reorganization and reduction in force. The subsequent hiring of Ms. Gross was due to a shortage of personnel that developed during and after the reorganization. Moreover, the plaintiff can have no cause to complain since the salary of Ms. Gross' position was substantially below, approximately $2,500, the salary that plaintiff was then earning in the New York Post Office. Any claim that plaintiff would have accepted the job had it been offered to her originally is totally negated by the fact that she turned down two offers of a position in the EEO Office at a salary *above* what she was then earning.

No doubt the cutback program caused various dislocations, changes of positions and reduction of salary for many employees, including plaintiff, who had felt secure in their respective positions. And so too, considering the vast number of persons involved, it is likely that errors were made in appointments. Plaintiff seems to believe that she was entitled to, and should have been offered, any position that became available in the EEO Office. However, she can establish no entitlement to any such position. Her position in the EEO Office was established in, and funded by, the New York Post Office. The position filled by Ms. Gross was funded by the Regional Office. The mere fact that she was not offered the position upon its establishment cannot by itself support a finding of racial discrimination. This conclusion is made inescapable when coupled with the fact that plaintiff subsequently rejected two offers, made in good faith, for the exact position that Ms. Gross assumed and to which plaintiff now claims she aspired. Plaintiff's own acts of refusing job opportunities both before and after her termination as Administrative Assistant foreclose any recognition of cognizable injury.

The Court finds, upon the totality of all the evidence, that Ms. Gross' appointment to the EEO Office in March 1973 was not based on any act, purpose or intent of discrimination against plaintiff by reason of her race or for any other reason. The complaint is dismissed upon the merits and judgment may be entered in favor of the defendant.[5]

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

---

ord nor the findings were offered in evidence on this trial; moreover, the trial before this Court, as already noted, is *de novo*.

**5.** The affirmative defenses that plaintiff's action should be dismissed because (1) leave to proceed in forma pauperis was based upon a false affidavit and that in fact plaintiff was not entitled to relief under 28 U.S.C. § 1915, and (2) it was not commenced within the statutory limitation period as required by 42 U.S.C. § 2000e-16(c), are denied. However, in view of the facts developed during the trial which establish that plaintiff was not entitled to relief under 28 U.S.C. § 1915, the order dated November 18, 1975 is hereby vacated.