**INTERNAL REVENUE SERVICE, FRESNO SERVICE CENTER, FRESNO, CALIFORNIA, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Treasury Employees Union, Intervenor.**

Nos. 82–7092, 82–7392.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1983.

Decided May 25, 1983.

Nicholas S. Zeppos, Dept. of Justice, Civ. Div., Washington, D.C., for petitioner.

Robert J. Englehart, Lois Williams, National Treasury Employees Union, Washington, D.C., for respondent.

Before KENNEDY and POOLE, Circuit Judges, and HATTER,* District Judge.

* The Honorable Terry J. Hatter, United States District Judge for the Central District of California, sitting by designation.

POOLE, Circuit Judge:

The Internal Revenue Service, Fresno Service Center, (IRS) petitions for review of a decision and order of the Federal Labor Relations Authority (the Authority) which held that the IRS committed an unfair labor practice in violation of the Labor-Management Relations Chapter of the Civil Service Reform Act of 1978. 5 U.S.C. § 7101 et seq. (Supp. V 1981). The Authority held that the IRS was wrong in failing to give notice to the union of, or to allow union representation at, an Equal Employment Opportunity (EEO) precomplaint conciliation conference as required by 5 U.S.C. § 7114(a)(2)(A) (Supp. V 1981).[1]

IRS contends that the Authority's decision and interpretation of 5 U.S.C. § 7114(a)(2)(A) directly conflict with 29 C.F.R. § 1613.213(a) (1982),[2] which prohibits an EEO counselor from revealing the identity of a person consulting the counselor until the person has filed a formal complaint of discrimination, and with the Privacy Act, 5 U.S.C. § 552a (1976).

We hold that the union representation rights guaranteed by 5 U.S.C.

§ 7114(a)(2)(A) do not apply to the EEO precomplaint conciliation conference involved in this case. Accordingly, we set aside the Authority's order and deny its cross-application for enforcement.

I.  FACTS

Edith Calderone was employed as a GS–9 computer operator at the IRS Fresno Service Center.[3] In November 1979, she was chosen for a position as a programmer analyst trainee in the Center's computer branch, but was informed that she would have to accept a reduction in grade to GS–7 to obtain the job. After hearing about the reduction, Calderone contacted Kathryn Biehaalder, her union steward and the executive vice-president of the local chapter of the National Treasury Employees Union (the union).

The two women then contacted the personnel office and were told that a computer program analyst with Calderone's background and qualifications should receive a ranking of GS–11. At Biehaalder's suggestion, Calderone filed an EEO complaint as well as a contractual grievance. Calderone

---

1.  Title 5 U.S.C. § 7114(a)(2)(A) provides:
    An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at—
    (A) any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment....

2.  Title 29 C.F.R. § 1613.213(a) provides:
    An agency shall require that an aggrieved person who believes that he or she has been discriminated against because of race, color, religion, sex, or national origin consult with an Equal Employment Opportunity Counselor to try to resolve the matter. The agency shall require the Equal Employment Opportunity Counselor to make whatever inquiry he or she believes necessary into the matter; to seek a solution of the matter on an informal basis; to counsel the aggrieved person concerning the issues in the matter; to keep a record of the counseling activities so as to brief, periodically, the Equal Employment Opportunity Officer on those activities; and, when advised that a complaint of discrimination has been accepted from an aggrieved person, to submit a written report to the Equal Employment Opportunity Officer, with

a copy to the aggrieved person, summarizing the counselor's actions and advice both to the agency and the aggrieved person concerning the issues in the matter... If, within 21 days, the matter has not been resolved to the satisfaction of the aggrieved person, that person shall be immediately informed in writing, at the time of the final interview, of his or her right to file a complaint of discrimination. The notice shall inform the complainant of his or her right to file a discrimination complaint at any time up to 15 calendar days after receipt of the notice of the appropriate official with whom to file a complaint and of complainant's duty to assure that the agency is immediately informed if the complainant retains counsel, or any other representative. The Counselor shall not attempt in any way to restrain the aggrieved person from filing a complaint. The Equal Employment Opportunity Counselor shall not reveal the identity of an aggrieved person who consulted the counselor, except when authorized to do so by the aggrieved person, until the agency has accepted a complaint of discrimination from that person.

3.  She is no longer employed by the IRS Fresno Service Center.

and Biehaalder discussed EEO complaint procedures with the agency's EEO officer after Biehaalder was designated Calderone's personal representative. The EEO officer then contacted Tommy Thompson, the head EEO counselor of the agency, and Thompson began an investigation of Calderone's complaint pursuant to 29 C.F.R. § 1613.213(a).

Thompson interviewed Calderone and Biehaalder and then met separately with Calderone's supervisor, the Chief of the Computer Branch at the Fresno Service Center. Thompson then suggested the parties meet to attempt to resolve the complaint informally. Biehaalder was the only union representative who was aware of or was given notice of the meeting arranged by Thompson.

An EEO precomplaint conciliation conference was held on January 2, 1980, and included Thompson, the agency's EEO officer, Calderone, Biehaalder and Calderone's supervisor. The meeting ended without resolution of the dispute.

After the union filed an unfair labor practice charge against the IRS, the Authority issued a complaint alleging that the IRS had committed an unfair labor practice by holding a formal discussion concerning a grievance or condition of employment without providing the union an opportunity to be represented at the discussion, in violation of 5 U.S.C. § 7114(a)(2)(A). After a hearing, an administrative law judge (ALJ) held that the union had a right under 5 U.S.C. § 7114(a)(2)(A) to be represented at the EEO meeting because it was a formal discussion and concerned conditions of employment. But the ALJ also held that because union steward Biehaalder was present, the IRS did not violate the union's representation rights.

The Authority agreed with the ALJ that the union did indeed have a right to be represented at the meeting. But it disagreed with the ALJ about the basis for the union's representation rights. The ALJ concluded that the union had a right to be represented at the January 2 conference because it concerned general conditions of employment under 5 U.S.C. § 7114(a). The Authority found instead that since the conference concerned only Calderone's individual employment status the meeting involved a grievance under 5 U.S.C. § 7114(a) rather than general conditions of employment. Because it found that the meeting concerned a grievance, the Authority, like the ALJ, concluded that the IRS had to allow union representation at the conference. But the Authority rejected the ALJ's conclusion that Biehaalder's presence protected the union's rights, holding that the union had an interest in being present at the EEO precomplaint conciliation conference independent of representing Calderone.

The IRS filed a timely petition for review of the Authority's decision pursuant to 5 U.S.C. § 7123(a) (Supp. V 1981), and the Authority cross-applied for enforcement. The IRS argues that the Authority's decision conflicts with 29 C.F.R. § 1613.213, an Equal Employment Opportunity Commission (EEOC) regulation requiring counselors to preserve the confidentiality of precomplaint conferences such as the one involving Calderone. It contends that the union representation requirements of 5 U.S.C. § 7114(a)(2)(A) do not apply to EEO precomplaint conciliation conferences and that the Authority's interpretation of the two statutes is in error.

## II. ANALYSIS

The Labor-Management Relations Chapter of the Civil Service Reform Act of 1978 is a comprehensive scheme regulating the rights and obligations of federal employees in collective bargaining. 5 U.S.C. § 7101 (Supp. V 1981). Congress has delegated to the Authority the responsibility of administering the Chapter and of resolving unfair labor practice complaints. 5 U.S.C. § 7105(a)(1) and (a)(2)(G). Generally, a reviewing court may set aside Authority orders only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. §§ 7123(c) (Supp. V 1981) and 706(2)(A) (1976); *United States Air Force v. FLRA,*

681 F.2d 466, 467 (6th Cir.1982); *National Federation of Federal Employees v. FLRA,* 652 F.2d 191, 193 (D.C.Cir.1981).

■ In this case, however, the Authority has construed not only the Labor-Management Chapter, in the administration of which it is accorded expertise, but an EEOC regulation. The Authority's interpretation of the provisions involved here extends beyond its designated area of responsibility and ventures into discrimination in federal employment, a field Congress explicitly has delegated to the EEOC. 42 U.S.C. § 2000e–16(b) (1976). While this court may give "considerable" weight to the Authority's interpretation of the Labor-Management Chapter, no such deference is owed to the Authority's reading of an EEOC regulation or to the Authority's resolution of the conflict between the statute and the EEOC regulation. *New Jersey Air National Guard v. FLRA,* 677 F.2d 276, 281–282 n. 6 (3rd Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982); *California National Guard v. FLRA,* 697 F.2d 874, 879 (9th Cir.1983). Therefore, we must independently decide the issue raised by the Authority's decision.

■ Title 5 U.S.C. § 7114(a)(2)(A) defines the representation rights of the union in the grievance process. It provides that the union must be given the opportunity to be represented at any formal discussion between the agency and an employee which concerns any grievance, personnel policy, or general condition of employment. This provision is designed to help protect collective bargaining and labor organizations, which are in the public interest. 5 U.S.C. § 7101(a).

■ On the other hand, 29 C.F.R. § 1613.213(a) [4] prohibits an EEO counselor from revealing the identity of a person consulting him before the person files a formal complaint of discrimination. Thompson, the EEO counselor who handled

Calderone's case, was thus prohibited from informing the union that he had scheduled a precomplaint conciliation conference to try and informally resolve the dispute. Requiring such confidentiality during early stages of an employment discrimination claim serves to facilitate informal resolution of disputes and to encourage employees with discrimination complaints to pursue and explore their claims without fear of retribution.

■ The union representation requirements of 5 U.S.C. § 7114(a)(2)(A) do not apply to an EEO precomplaint conciliation conference, as the Authority held in this case, unless there is to be a "formal discussion ... concerning any grievance or any personnel policy or practices or other general condition of employment...." The meeting arranged by EEO Counselor Thompson does not in our view fall within the definition of 5 U.S.C. § 7114(a)(2)(A) for the reasons we will set forth, and therefore the union was not entitled to prior notification or to be present at the meeting.

■ First, union representation was not required at the conference because it did not constitute a "formal discussion" within the meaning of 5 U.S.C. § 7114(a)(2)(A). The Authority concluded that it was a formal meeting because it was held in an IRS conference room, was scheduled in advance and so was not impromptu, and was attended by Calderone's supervisor. But while the Authority acknowledged that the purpose of the meeting was to resolve informally a discrimination dispute in which a formal complaint had not yet been filed with the EEOC, it failed to give adequate consideration to this most critical circumstance. The meeting was convened by Thompson under the EEOC procedure (29 C.F.R. § 1613.213(a)) by which an EEO counselor seeks to resolve discrimination charges in the precomplaint stage on an "informal basis." Given that basis and pur-

---

4. The regulation was promulgated by the EEOC pursuant to an express grant of authority con- tained in the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(b) (1976).

pose of the meeting, the discussion was informal rather than formal.

We reach this conclusion by examining the procedures and regulatory structure concerning complaints of discrimination in federal employment. In 1972, Congress extended the coverage of Title VII of the Civil Rights Act of 1964[5] to employees of the federal government. A principal purpose of the amendments was to eliminate discrimination in federal employment by granting federal employees the rights and safeguards available to workers in the public sector. *Chandler v. Roudebush,* 425 U.S. 840, 841, 96 S.Ct. 1949, 1950, 48 L.Ed.2d 416 (1976). A federal employee who has been discriminated against must first contact an EEO counselor. 29 C.F.R. §§ 1613.213(a) and 1613.214(a)(1)(i) (1982). The EEO counselor is required not only to give advice and to investigate but "to seek a resolution of the matter on an informal basis." 29 C.F.R. § 1613.213(a). This opportunity for informal resolution is clearly a key element in the EEOC complaint procedure; the EEOC requires employees alleging discrimination to exhaust the precomplaint procedures of 29 C.F.R. § 1613.213 before filing a formal complaint and activating formal steps in the EEOC process. 29 C.F.R. §§ 1613.-204(f)(3) (1982) and 1613.213(a). Although Calderone's claim can be characterized as a complaint about her treatment, when Thompson arranged the January 2 meeting it was not yet a formal complaint in the sense meant by EEOC procedures.

Our interpretation is supported by an examination of comparable provisions governing EEOC procedures for processing discrimination complaints in the private sector. Those provisions, and their legislative history, stress voluntary compliance with the Civil Rights Act and prohibit public disclosure of discrimination complaints prior to the institution of formal proceedings. 42 U.S.C. §§ 2000e–5 and 2000e–8 (1976); 29 C.F.R. § 1601.20 (1982); *International Union of Electrical, Radio and Machine Workers v. NLRB,* 648 F.2d 18, 27 (D.C.Cir.1980).

As Senator Dirksen, in offering an amendment to Title VII of the Civil Rights Act of 1964, explained, "The maximum results from the voluntary approach will be achieved if the investigation and conciliation are carried on in privacy. If voluntary compliance with this title is not achieved, the dispute will be fully exposed to public view when a court suit is filed." 110 Cong. Rec. 8,193 (1964). Although these provisions relate to discrimination in the private sector rather than in federal employment, they illustrate Congress' concern with the confidentiality of EEOC investigations and its belief that such confidentiality is important in achieving voluntary compliance with the goals of Title VII.

■ In addition, the Authority erred in applying 5 U.S.C. § 7114(a)(2)(A) to the precomplaint conciliation conference because the meeting did not concern a "grievance." The Authority based its conclusion that the conference involved a grievance on 5 U.S.C. § 7103(a)(9) (Supp. V 1981), which defines a grievance as "any complaint . . . by an employee concerning any matter relating to the employment of the employee. . . ." However, the EEOC procedures involved in this case are not controlled by 5 U.S.C. § 7114(a)(2)(A) because they are discrete and separate from the grievance process to which 5 U.S.C. §§ 7103 and 7114 are directed.

The union is granted representation rights under 5 U.S.C. § 7114 because of its status as exclusive bargaining representative. As exclusive representative, the union has responsibility for administering the collective bargaining agreement and has an obvious interest in being present when a dispute governed by the grievance procedure it negotiated is discussed or resolved. However, the EEOC procedure is unrelated to and separate from the contractual grievance process. In fact, the collective bargaining agreement between the union and the IRS explicitly excludes claims of dis-

5. 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq. (1976 and Supp. IV 1980).

crimination from the grievance procedure. Calderone pursued her complaints regarding job ranking using two different and distinct mechanisms—the statutory EEOC procedure and the negotiated grievance procedure specified in the collective bargaining agreement.[6] The January 2 meeting did not involve any aspect of the collective bargaining agreement or representation of Calderone's contractual rights.

The union's interest in the statutory EEOC procedure is not the same as its interest in the contractual grievance process. It has duties and obligations under the negotiated grievance mechanism, for example, but it has no such institutional role in the EEOC process. Similarly, there is no reason it should have the same rights in the EEOC procedure as it does in the contractual grievance process. For all these reasons we decide that the EEOC claim of discrimination in this case did not constitute a "grievance" within the meaning of 5 U.S.C. § 7114(a)(2)(A).

Because we have held that 5 U.S.C. § 7114(a)(2)(A) does not apply to precomplaint conciliation conferences such as that involved here, we deem it unnecessary to reach the issue whether the Authority's decision violated the Privacy Act, 5 U.S.C. § 552a.

The Authority's order is SET ASIDE and its cross-application for enforcement is DENIED.

---

**6.** Calderone's grievance, filed under the contract, alleged contractual violations relating to the failure of the IRS to promote her.